IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| BLANCA VALENZUELA, MARGIE SALAZAR, JOSE A. SERRATO, JOSIE RENDON, CLARA TOVAR, CONSUELO ESPINO, MARIA AVILA, ERNESTINA NAVARRETTE, MARIA E. MUNOZ, AMANDA SALCIDO, CANDELARIO G. ORTEGA, MARIA ORTIZ, JOSE OLIVA, RAFAELA CHAVEZ, ELODIA ARROYO, SUSANA CARDIEL, GRACIE RIOS, AND LEONEL RUIZ, individually and on behalf of all others similarly situated<br><br>*Plaintiffs,*<br><br>VS.<br><br>SWIFT BEEF COMPANY, INC. D/B/A SWIFT COMPANY, SWIFT & COMPANY, HICKS, MUSE, TATE & FURST, INC., HM CAPITAL PARTNERS OF DALLAS, LLC and JOHN DOES I-V<br><br>*Defendants* | § § § § § § § § § § § § § § § § § § § § § § § Civil Action No. 3-06CV2322-N |

FIRST AMENDED COMPLAINT

**TO THE HONORABLE COURT:**

Plaintiffs, Blanca Valenzuela, Margie Salazar, Jose A. Serrato, Josie Rendon, Clara Tovar, Consuelo Espino, Maria Avila, Ernestina Navarrette, Maria E. Munoz, Amanda Salcido, Candelario G. Ortega, Maria Ortiz, Jose Oliva, Rafaela Chavez, Elodia Arroyo, Susana Cardiel, Gracie Rios, and Leonel Ruiz, individually and on behalf of all others similarly situated (hereinafter referred to herein collectively as "Plaintiffs"), bring this First Amended Complaint against Defendants, Swift Beef Company, Inc. d/b/a Swift Company, Swift & Company, Hicks, Muse, Tate & Furst, Inc., HM Capital Partners of Dallas, L.L.C. and John Does I-V for damages

under the laws of the United States and the State of Texas and would respectfully show unto the Court as follows:

## I.

## NATURE OF THE CASE

1. This is a class action brought on behalf of all persons legally authorized to be employed in the United States who have been employed at the Swift processing plants as hourly wage earners at one of its facilities ("The Swift Facilities"), which are located in Texas, Colorado, Utah, Nebraska, Iowa, Kentucky, Minnesota and California. These plants were owned and managed by Swift Beef Company, Inc., Swift & Company, Hicks, Muse, Tate & Furst, Inc. and HM Capital Partners, L.L.C. (herein referred to collectively as the "Swift Defendants").

2. The Complaint contends that all such persons have been victimized by a scheme perpetrated both by the Swift Defendants and the Individual Defendants through a conspiracy to depress the wages paid to its employees by knowingly hiring a workforce substantially comprised of undocumented illegal immigrants for the express purpose of depressing wages (herein referred to as either "the Illegal Immigrant Hiring Scheme" or "the Scheme").

3. The Illegal Immigrant Hiring Scheme violates the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* (herein referred to as "RICO") and has directly and proximately caused the wages paid to plaintiffs and the class members to be substantially depressed (i.e. below the level of wages Defendants would have had to pay for this labor if it were not engaged in the Scheme).

## II.

## PARTIES

4. All of the Plaintiffs were legally authorized for employment in the United States, pursuant to the immigration laws of the United States, and, at all relevant times, were employed by the Swift Defendants as hourly paid employees.

5. Plaintiff Blanca Valenzuela is a resident of Moore County, Texas.

6. Plaintiff Margie Salazar is a resident of Moore County, Texas.

7. Plaintiff Jose A. Serrato is a resident of Moore County, Texas.

8. Plaintiff Josie Rendon is a resident of Moore County, Texas.

9. Plaintiff Clara Tovar is a resident of Moore County, Texas.

10. Plaintiff Consuelo Espino is a resident of Moore County, Texas.

11. Plaintiff Maria Avila is a resident of Moore County, Texas.

12. Plaintiff Ernestina Navarrette is a resident of Moore County, Texas.

13. Plaintiff Maria E. Munoz is a resident of Moore County, Texas.

14. Plaintiff Amanda Salcido is a resident of Moore County, Texas.

15. Plaintiff Candelario G. Ortega is a resident of Moore County, Texas.

16. Plaintiff Maria Ortiz is a resident of Moore County, Texas.

17. Plaintiff Jose Oliva is a resident of Moore County, Texas.

18. Plaintiff Rafaela Chavez is a resident of Moore County, Texas.

19. Plaintiff Elodia Arroyo is a resident of Moore County, Texas.

20. Plaintiff Susana Cardiel is a resident of Moore County, Texas.

21. Plaintiff Gracie Rios is a resident of Moore County, Texas.

22. Plaintiff Leonel Ruiz is a resident of Moore County, Texas.

23. Defendant Swift Beef Company, Inc. is a Delaware corporation licensed to do business in the State of Texas and may be served through its registered agent for service of process, C.T. Corporation System, at 350 N. St. Paul Street, Dallas, Texas 75201.

24. Defendant Swift & Company is a business which may be served through its registered agent for service of process, C.T. Corporation System, at 350 N. St. Paul Street, Dallas, Texas 75201.

25. Defendant Hicks, Muse, Tate & Furst, Inc. is a Texas corporation doing business in the State of Texas and may be served through its registered agent for service of process, C.T. Corporation System, at 350 N. St. Paul Street, Dallas, Texas 75201.

26. Defendant HM Capital Partners, L.L.C.. is a corporation doing business in the State of Texas and may be served through its registered agent for service of process, C.T. Corporation System, at 350 N. St. Paul Street, Dallas, Texas 75201.

27. Upon information and belief, John Does I-V are officers, agents, managers, employees and affiliated persons whose identities have not yet been determined, who are employed by or act on behalf of the Swift Defendants and their illegal enterprise (as set forth more fully herein) and who had personally participated in and had the right to supervise, direct and control the wrongful conduct alleged in this Complaint. Their true and correct legal identities will be added by amendment when properly ascertained through the course of appropriate discovery in this case.

## III.

## JURISDICTION AND VENUE

28. This Court has subject matter jurisdiction over the claims made in this lawsuit pursuant to 28 U.S.C. § 1331 as a federal question and by 28 U.S.C. § 1964(a) of RICO, the statute's jurisdictional provision for civil actions.

29. Venue is proper and appropriate, pursuant to 28 U.S.C. 1391(a)(1) and (2).

## IV.

## CLASS ALLEGATIONS

30. This action is brought, and may be maintained, as a class action pursuant to FED. R. CIV. P. 23(b)(3). Plaintiffs bring this action on behalf of themselves and all other persons, legally authorized to be employed in the U.S., who have been employed at the Swift facilities as hourly wage earners.

31. The Class for whose benefit this action is brought is so numerous that joinder of all Class members is impracticable. The actual number can only be ascertained through a discovery of Swift's books and records.

32. Among the questions of fact and law that are common to the Class are:

   a. Whether the Swift Defendants engaged in the Illegal Immigrant Hiring Scheme;

   b. Whether the Defendants have conspired to perpetrate the Illegal Immigrant Hiring Scheme;

   c. Whether the Illegal Immigrant Hiring Scheme has caused Plaintiffs' wages to be depressed; and

   d. Whether the Illegal Immigrant Hiring Scheme violates the Immigration and Nationality Act and RICO.

33. Plaintiffs' claims are typical of those of the Class in that they arise from the damages they have suffered as a result of the Illegal Immigrant Hiring Scheme. Plaintiffs seek no relief that is antagonistic to or adverse to the other Class members.

34. Plaintiffs are committed to the vigorous prosecution of this action and have retained counsel who are competent in the prosecution of this case and who intend to adequately protect and represent the interests of the Class.

35. Questions of law or fact common to the Class predominate over issues affecting individual Class members. A class action is the only appropriate method for the fair and efficient adjudication of this controversy for the following reasons, among others:

    a. The individual amounts of damages involved, while not insubstantial, are generally not large enough to justify individual actions;

    b. The costs of individual actions would unreasonably consume the amounts that would be recovered;

    c. Individual actions would unduly burden the judicial system; and

    d. Individual actions brought by Class members would create a risk of inconsistent results and would be unnecessarily duplicative of this litigation.

36. Plaintiffs anticipate no extraordinary or unusual difficulty in the management of this action because the evidence proving the Illegal Immigrant Hiring Scheme and the specific identities of all the participants in such (including the specific identities of John Does I-V) is ascertainable through discovery; the identities of the Class members are known to the Swift Defendants; and damages can be calculated to a reasonable certainty through expert testimony.

## V.

## THE WRONGFUL CONDUCT

**A.**     **The Illegal Immigrant Hiring Scheme**

37.     The Immigration Reform and Control Act, 8 U.S.C. § 1324 *et seq.*, and its accompanying regulations, require employers to verify, under the penalty of perjury, that they have examined documents produced by each employee which establish the employee's authorization for employment in the U.S.  Specifically, the employer must verify the documents are genuine and relate to the person tendering them.

38.     The Swift Defendants are engaged in a long-term pattern and practice of violating the Immigration Reform and Control Act and the Immigration and Nationality Act which prohibits the employment of unauthorized immigrants.  The Swift Defendants do so in numerous ways, including:

a.     Instructing employees to falsify employment verification documents; and

b.     Ignoring obvious facts which indicate that documents do not relate to the people tendering them, particularly the inability to speak English and hiring workers who appear obviously different than the photographs or descriptions that appear in their stolen identities (herein referred to as the "Blind Eye Policy").

39.     The Blind Eye Policy has been approved by the Swift Defendants and the Individual Defendants and has been long standing policy at the Swift Facilities.

**B.**     **The Defendants' Attempt to Circumvent IRCA**

40.     The Swift Defendants have, at various times, used the federal government's Basic Pilot program in order give the false cursory appearance of complying with the Immigration Reform and Control Act while actively circumventing and subverting such law.

41. Basic Pilot, an internet verification program, confirms that government-issued eligibility documents were actually issued and the name of the person to whom they were issued. However, it does not establish that the person presenting the documents is the actual person to whom they were issued. The employer must still comply with its federally mandated verification requirement, which the Swift Defendants do not do. This scheme by the Swift Defendants is nothing more than a transparent attempt to circumvent the Immigration Reform and Control Act.

## VI.

## ACTS OF RACKETEERING

42. The Swift Defendants have employed more than twenty (20) individuals each calendar year who did not have the legal right to work at the Swift facilities, pursuant to the immigration and citizenship laws of the United States (hereinafter referred to as the "Illegal Immigrants").

43. The Illegal Immigrants were willing to work for lesser wages at The Swift Facilities than those individuals who had the legal right to work at The Swift Facilities would have been willing to accept and work for had the Defendants not artificially manipulated the labor market.

44. The Swift Defendants hired the Illegal Immigrants to work at The Swift Facilities even though these Illegal Immigrants did not have the legal right to work there, pursuant to the immigration and citizenship laws of the United States.

45. The Swift Defendants hired these Illegal Immigrants despite knowing and having actual knowledge that it was in violation of the immigration laws of the United States to do so and, in several instances, actively sought to locate these Illegal Immigrants and hire them – knowing full well that it was in violation of the immigration laws of the United States to do so.

The Swift Defendants did so in a specific and purposeful attempt to manipulate and depress the labor market.

46. The Swift Defendants violated 8 U.S.C. § 1324(a)(1)(A)(iii) by harboring unauthorized, illegal immigrants with knowledge or reckless disregard that each entered the U.S. illegally. The Swift Defendants' employment of such illegal immigrants constitutes harboring. Moreover, the Swift Defendants' aid and help of these illegal immigrants to obtain fake immigration documents also constitutes harboring.

47. The Defendants have aided and abetted in harboring, concealing, transporting, and smuggling Illegal Immigrants in violation of section 274 of the Immigration & Nationality Act.

48. These federal crimes of "knowingly hiring" and "harboring" illegal immigrants are provisions of § 274 of the Immigration and Nationality Act and are made predicate offenses by § 1961(1)(F) of RICO.

## VII.

## RICO

49. Defendants' activities alleged herein are conducted in violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961, *et seq.*

50. The Defendants are each "persons" capable of holding a legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

51. In hiring Illegal Immigrants and thereby artificially depressing the labor market, as set forth herein, the Defendants associated themselves in managing an enterprise that grossly affected interstate commerce through a pattern of racketeering activity. The activity of the Defendants constitute an ongoing scheme to defraud those persons who had the legal right to work at The Swift Facilities, including the Plaintiffs. Each of the Defendants is liable to

Plaintiffs as a principal in the scheme.  Each of the Defendants is additionally liable to Plaintiffs for any and all acts of its employees or agents under the doctrine of *respondeat superior* and principles of agency.

52. In furtherance of their scheme, the Defendants have knowingly, willfully and unlawfully engaged in a pattern of fraudulent and illegal conduct to defraud and artificially depress the labor market, including repeated violation of The Illegal Immigration Reform and Immigration Responsibility Act of 1996.

53. Each separate use of the United States mails or interstate wire communications in furtherance of the Defendants' fraud and scheme constitutes a racketeering activity under 18 U.S.C. § 1961 (1)(B).

54. Each separate violation of The Illegal Immigration Reform and Immigration Responsibility Act of 1996 in furtherance of the Defendants' fraud and scheme constitutes a racketeering activity under 18 U.S.C. § 1961 (1)(B).

55. The Defendants have committed at least two acts of racketeering activity not separated by more than ten years since the enactment of RICO.  The Defendants' ongoing and systematic efforts to defraud those individuals who had the legal right to work at The Swift Facilities, including Plaintiffs, pose a threat of ongoing and continuing illegal activity.  The Defendants are engaged in a pattern of racketeering activity under U.S.C § 1961(5).

56. The Defendants were, at all times relevant, engaged in an enterprise as that term is defined in 18 U.S.C. § 1961(4) and engaged in (and its activities affect) interstate commerce by, but not limited to the transportation of Illegal Immigrants across the borders of the United States and by and between different states of the United States and by the processing and selling of meat

across the United States that was processed as a result of the illegal scheme to manipulate and depress the labor market.

57. The Defendants have, as set forth herein, engaged in a pattern of racketeering activity in connection with the acquisition, establishment, conduct or control of their joint enterprise.

58. By manipulating and controlling the labor market, The Defendants have acquired or maintained an interest in, or control of, an enterprise affecting interstate commerce through their pattern of racketeering activity in violation of 18 U.S.C. § 1962(b).

59. The Defendants have been employed or associated with an enterprise which is engaged in, or the activities of which affect, interstate commerce and have conducted or participated in the conduct of that enterprise's affairs through the pattern of racketeering activity described herein in violation of 18 U.S.C. § 1962(c).

### A. The Wrongful Documentation Enterprise

60. The Individual Defendants and the Swift Defendants entered into various agreements with persons to help get fake immigration documentation for individuals who the Defendants knew were illegal immigrants (herein referred to as the "documentation middlemen"). They entered into these agreements in a specific and calculated manner in an attempt to further their Blind Eye Policy. However, pursuant to the Illegal Immigrant Hiring Scheme, the Defendants knew that this documentation was false. At all times relevant, the management at the Swift Facilities knew the workers supplied by the documentation middlemen were driving down wages below the level at which they would have been but for the illegal conduct of the Defendants.

61. At all times relevant, the documentation middlemen, who were retained to help prospective employees obtain fake and false immigration documentation, maintained their own business operations and were not agents of the Swift Defendants and were paid a fee for their work performed.

62. The Defendants reviewed the fake immigration documentation obtained by the documentation middlemen and, pursuant to the Blind Eye Policy, accepted such documentation when they knew that such workers were Illegal Immigrants. The management of the Swift Facilities acquiesced and approved of this illegal hiring.

63. Plaintiffs allege that each relationship with the documentation middlemen formed and association-in-fact RICO enterprise, pursuant § 1961(4), with the purpose of recruiting hourly employees to the Swift Facilities. The Defendants participated in the affairs of each of these association-in-fact enterprises by paying for services for workers that it knew to be illegal immigrant labor.

64. Each of these association-in-fact RICO enterprises affected interstate commerce. The Swift Defendants participated in the affairs of each enterprise through a pattern of racketeering activity, knowingly employing and harboring illegal immigrants, as set forth herein. As a result, the Swift Defendants are each a RICO "person", pursuant to § 1961(3).

65. Plaintiffs were proximately damaged as a direct result of the pattern of racketeering activity perpetrated by the Swift Defendants through each of these association-in-fact enterprises because this pattern of racketeering activity caused the wages paid at the Swift Facilities to be depressed below what they would have been in the labor market consisting only of legal workers.

B. **The Swift Enterprise**

66. The Individual Defendants have entered into a conspiracy, as set forth herein, to carry out the Illegal Immigrant Hiring Scheme by furthering such scheme in a specific ongoing way. They have approved the Blind Eye Policy; agreed to pay hourly wages that they knew were below what an entirely legal workforce would command and entered into associations with the documentation middlemen.

67. Each of the Individual Defendants is a person, pursuant to § 1961(3), who agreed to the objective of carrying out the Illegal Immigrant Hiring Scheme and that the Scheme would be perpetrated by the members of the conspiracy. In addition, each co-conspirator knew that the Illegal Immigrant Hiring Scheme would entail a pattern of racketeering activity, the ongoing employment of thousands of illegal immigrants. Additionally, each member of the conspiracy agreed that the conspiracy would be undertaken by participating in the employment practices and policies of the Swift Facilities. Each co-conspirator is in management of the Swift Facilities or participated indirectly in such management.

68. All of the conspirators agreed that the Illegal Immigrant Hiring Scheme would be conducted through the Swift Facilities, which is an enterprise, pursuant to § 1961(4), affecting interstate commerce.

69. All of the conspirators agreed to the conspiracy to enrich themselves by enriching the Swift Defendants at the expense of Plaintiffs by depressing wages.

C. **Conspiracy to Violate RICO**

    1. **The Individual Defendants**

70. The Individual Defendants have violated § 1962(d) of RICO by conspiring to violate § 1962(c) of RICO. Their agreement, as set forth herein, was to execute the Illegal

Immigrant Hiring Scheme. They have all knowingly and willfully entered this conspiracy, agreeing that members of the conspiracy, which also include individuals conducting hiring at the Swift Facilities, would, pursuant to the policies they had established, hire hundreds of illegal immigrants as hourly-paid workers for the purpose of depressing wages. Each co-conspirator also agreed that the RICO predicate acts constituting the Illegal Immigrant Hiring Scheme, detailed above, would be committed through the Swift Facilities, a RICO enterprise.

71. Each co-conspirator is jointly and severally liable for all of the damages to the Plaintiffs and the amount of money their wages were depressed during the entire class period, which began in 2000 and continues through trial.

### 2. The Swift Defendants

72. The Swift Defendants, in their operation of the Swift Facilities, in addition to being the enterprise for the individual defendants detailed above, are also RICO Defendants. They have violated § 1962(c) of RICO by committing a pattern of racketeering activity, the Illegal Immigrant Hiring Scheme, through the association-in-fact enterprises.

73. By hiring the Illegal Immigrants, the Defendants were able to artificially depress the wages they had to pay to those individuals who the legal right to work in the United States, including the Plaintiffs.

74. By illegally increasing the competition for jobs at The Swift Facilities, the Defendants were able to pay those individuals who had the legal right to work in the United States, including Plaintiffs, less wages than they otherwise would have had to pay them had the Defendants not engaged in such illegal activity.

75. The Defendants paid the Plaintiffs, during the time period they were employed at The Swift Facilities, substantially less in wages than they would have had to pay them if the

Defendants had not engaged in the illegal activity of employing Illegal Immigrants and illegally manipulating and depressing the labor market.

### D. RICO Damages

76. As set forth herein, as a direct and proximate cause of the racketeering activity of all of the Defendants through the various RICO enterprises and violations of 18 U.S.C. § 1962(a), (b) & (c) by the depression of wages as a result of the Illegal Immigrant Hiring Scheme, Plaintiffs have been damaged. At all relevant times, the hourly wages earned by Plaintiffs were depressed below what they would have been had the Defendants not engaged in the Illegal Immigrant Hiring Scheme.

## VIII.

## CIVIL CONSPIRACY

77. Defendants have engaged and participated with agents, brokers and other individuals in an effort to intentionally violate the immigration laws of the United States and employ Illegal Immigrants for the specific purpose of lessening its labor costs and increasing its profits.

78. Defendants and their co-conspirators have acted in combination to wrongfully and illegally depress and artificially lower the wages paid to individuals at The Swift Facilities who had the legal right to work in the United States, including the Class Members.

79. This conspiracy by the Defendants was committed with malice and specific intent to harm the individuals who had the legal right to work at Swift Company, including the Class Members.

80. Defendants have been unjustly enriched by their conspiracy to illegally and artificially lower the wages of those individuals who had the legal right to work at The Swift Facilities and the Class Members have been damaged as a result of such conspiracy.

**FIRST AMENDED COMPLAINT**                                                                                   Page 15

81. As a direct and proximate cause of the civil conspiracy of the Defendants, the Class Members, including Plaintiffs, have been injured and damaged in an amount not yet determined and are entitled to the recovery of such actual damages.

82. Because of Defendants' malicious and intentional conspiracy to harm the Class Members, the Class Members seek, in addition to any actual damages awarded, the imposition of exemplary damages against the Defendants, in the collective amount of Twenty-Three Million Dollars ($23,000,000), in an attempt to deter Defendants (and others similarly situated as Defendants) from engaging in this type of conduct in the future.

## IX.

## REQUESTED RELIEF

**WHEREFORE,** Plaintiffs respectfully request the following relief:

A. That the Court certify the Class, pursuant to FED. R. CIV. P. 23(b)(3):

B. That the Court enter a judgment against the Defendants setting forth specific findings that the Defendants have:

  (1) engaged in a civil conspiracy to defraud Plaintiffs, and did so knowingly, intentionally and with malice;

  (2) conspired to wrongfully and illegal manipulate and depress the labor market, and did so knowingly, intentionally and with malice; and

  (3) violated RICO, 18 U.S.C. § 1961, *et seq.*, and did so knowingly, intentionally and with malice;

C. That the Court order the Defendants to pay, jointly and severally, the following:

  (1) Actual economic damages in an amount within the jurisdictional limits of the Court;

  (2) Threefold the economic damages as allowed by 18 U.S.C. § 1964(c);

  (3) The amount equal to all profits unlawfully earned by Defendants as a result of their unlawful conduct;

(4) Exemplary damages in the amount of Twenty-Three Million Dollars ($23,000,000);

(5) Pre-Judgment Interest as provided by law;

(6) Appropriate attorney's fees;

(7) Costs of Suit;

(8) Post-Judgment interest as provided by law; and

(9) Such other and further relief to which Plaintiffs may be justly entitled.

**Respectfully Submitted,**

  /s/ Michael E. Heygood
Michael E. Heygood
State Bar No. 00784267
Claudia Cano
State Bar No. 00793458
Angel Reyes, III
State Bar No. 00784835
**HEYGOOD, ORR, REYES & BARTOLOMEI**
2331 W. Northwest Highway, 2nd Floor
Dallas, Texas 75220
214/526-7900
214/526-7910 (Fax)

Domingo A. Garcia
State Bar No. 07631950
Paul R. Hornung
State Bar No. 00795831
**LAW OFFICE OF DOMINGO GARCIA, P.C.**
1107 W. Jefferson Blvd.
Dallas, Texas 75208-5145
(214) 941-8300
(214) 943-7536 (Fax)

**ATTORNEYS FOR PLAINTIFFS**