# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **BLANCA VALENZUELA, MARGIE SALAZAR, JOSE A. SERRATO, JOSIE RENDON, CLARA TOVAR, CONSUELO ESPINO, MARIA AVILA, ERNESTINA NAVARRETTE, MARIA E. MUNOZ, AMANDA SALCIDO, CANDELARIO G. ORTEGA, MARIA ORTIZ, JOSE OLIVA, RAFAELA CHAVEZ, ELODIA ARROYO, SUSANA CARDIEL, GRACIE RIOS, AND LEONEL RUIZ, individually and on behalf of all others similarly situated** | § § § § § § § § § § § § § | |
| **VS.** | § § | **Civil Action No. 3-06CV2322-N** |
| **SWIFT BEEF COMPANY, INC. D/B/A SWIFT COMPANY, SWIFT & COMPANY, HICKS, MUSE, TATE & FURST, INC., HM CAPITAL PARTNERS OF DALLAS, LLC and JOHN DOES I-V** | § § § § § | |

## PLAINTIFFS' RESPONSE TO SWIFT & COMPANY AND SWIFT BEEF COMPANY'S MOTION TO DISMISS AND BRIEF IN SUPPORT

Michael E. Heygood
State Bar No. 00784267
Charles W. Miller
State Bar No. 24007677
Claudia Cano
State Bar No. 00793458
Angel Reyes, III
State Bar No. 00784835
**HEYGOOD, ORR, REYES & BARTOLOMEI**
2331 W. Northwest Highway, 2nd Floor
Dallas, Texas 75220
214/526-7900
214/526-7910 (Fax)

Domingo A. Garcia
State Bar No. 07631950
Paul R. Hornung
State Bar No. 00795831
**LAW OFFICE OF DOMINGO GARCIA, P.C.**
1107 W. Jefferson Blvd.
Dallas, Texas 75208-5145
(214) 941-8300
(214) 943-7536 (Fax)

**ATTORNEYS FOR PLAINTIFFS**

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.   ARGUMENT AND AUTHORITIES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

    A.   The National Labor Relations Board's Primary Jurisdiction Over Certain
        Labor Issues Does Not Deprive this Court of its Subject Matter
        Jurisdiction Over this Case Because the Labor Issues Are Collateral.  . . . . . . .  3

    B.   The Unions are Not Indispensable Parties, But Can Be Joined if
        Necessary.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

        1.   The Unions Are Not Indispensable Parties.  . . . . . . . . . . . . . . . . . . . . .  5

        2.   The Unions Can Be Joined If Necessary Under 18 U.S.C. §
            1965(d).  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

    C.   Plaintiffs' Complaint Satisfies RICO's Proximate Cause Standard.  . . . . . . . . .  8

    D.   Plaintiffs' Complaint Is Sufficient to State a Claim Under the RICO
        Statute.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

        1.   Plaintiffs' Complaint Adequately Pleads Violations of the
            Federal Immigration Laws, the Predicate Acts for
            Plaintiffs' RICO Claims.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

        2.   Plaintiffs' Complaint Adequately Pleads a RICO
            Enterprise.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

            a.   Plaintiffs' Enterprise Allegations Are Sufficiently
                Specific.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

                1)   The "Wrongful Documentation Enterprise."  . . . . . . . .  15

                2)   The "Swift Enterprise."  . . . . . . . . . . . . . . . . . . . . . . . .  18

            b.   Plaintiffs' Enterprise Allegations Sufficiently
                Allege Continuity.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

            c.   Plaintiffs' Enterprise Allegations Sufficiently
                Allege that the RICO Persons Are Distinct from the
                RICO Enterprises.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

                1)   The "Wrongful Documentation Enterprise"
                    is Distinct from Defendants.  . . . . . . . . . . . . . . . . . . .  23

a) *Baker* Is Distinguishable and Has Been Rejected by Courts in Similar Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

b) The Swift Defendants' Other Distinctness Cases Are Distinguishable. . . . . . . . . . . . . . . . . . . . . . . 26

2) The "Swift Enterprise" is Distinct from the Individual Defendants. . . . . . . . . . . . . . . . . . . . . . . . . 28

d. Plaintiffs Are Not Using the Doctrine of *Respondeat Superior* to Circumvent RICO. . . . . . . . . . . . . . . . . . . . . . . . 29

e. Plaintiffs' Complaint Sufficiently Alleges the Swift Defendants' Participation in the Affairs of the Enterprise. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

3. Plaintiffs' Complaint Adequately Pleads Violations of § 1962(a), (b), and (d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

a. The Complaint Sufficiently Alleges a Violation of § 1962(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

b. The Complaint Sufficiently Alleges a Violation of § 1962(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

c. The Complaint Sufficiently Alleges a Violation of § 1962(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

4. Plaintiffs Have Sufficiently Pleaded a Pattern of Racketeering Activity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

E. The Court Should Exercise Supplemental Jurisdiction Over Plaintiffs' State-Law Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

F. If the Court Determines that a More Definite Statement Is Required, Plaintiffs Are Willing To File an Amended Complaint. . . . . . . . . 35

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

# TABLE OF AUTHORITIES

## CASE LAW

*Abraham v. Singh*,
480 F.3d 351 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 28, 34

*Anza v. Ideal Steel Supply Corp.*,
126 S.Ct. 1991 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10

*Atkinson v. Anadarko Bank & Trust Co.*,
808 F.2d 438 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

*Baker v. IBP, Inc.*,
357 F.3d 685 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 8, 14, 25, 26, 31, 32

*Brewer v. Salyer*,
No. CV F 06-01324 AWI DLB, 2007 U.S. Dist. LEXIS
(E.D. Cal. May 16, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22, 35

*Bridge v. Invest Am., Inc.*,
748 F. Supp. 948 (D. R.I. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8

*Britt v. Grocers Supply Co.*,
978 F.2d 1441 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Brittingham v. Mobil Corp.*,
943 F.2d 297 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Burstein v. First Penn-Pacific Life Ins. Co.*,
No. 01-985-CIV-Graham/Turnoff, 2002 U.S. Dist. LEXIS 28115
(S.D. Fla. Feb. 12, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Butchers' Union Local No. 498 v. SDC Inv., Inc.*,
788 F.2d 535 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Cash Today of Texas, Inc. v. Greenberg*,
No. 4:01-CV-A, 2003 U.S. Dist. LEXIS 80 (N.D. Tex. Jan. 6, 2006) . . . . . . . . . . . . . . . . . . 31

*Cedric Kusher Promotions, Ltd. v. King*,
533 U.S. 158 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 28, 29

*Commercial Cleaning Servs. v. Colin Serv. Sys., Inc.*,
271 F.3d 374 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14

*Commun. Workers of Am. v. Beck,*
 487 U.S. 735 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Connell Constr. Co. v. Plumbers & Steamfitters Local Union No. 100,*
 421 U.S. 616 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Crowe v. Henry,*
 43 F.3d 198 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Delta Truck & Tractor, Inc. v. J.I. Case Co.,*
 855 F.2d 241 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Fitzgerald v. Chrysler Corp.,*
 116 F.3d 225 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*H.J., Inc. v. N.W. Bel. Tel. Co.,*
 492 U.S. 229 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re Burzynski,*
 989 F.2d 733 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Jaguar Cars v. Royal Oaks Motor Car Co.,*
 46 F.3d 258 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Mendoza v. Zirkle Fruit Co.,*
 301 F.3d 1163 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 11, 12, 13, 14, 26, 33

*Mohawk Indus. v.  Williams,*
 126 S.Ct. 2016 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Office Outfitters, Inc. v. A.B. Dick Co.,*
 83 F. Supp. 2d 772 (E.D. Tex. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Reves v. Ernst & Young,*
 507 U.S. 170 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31, 32

*Rolls Royce Motors, Inc. v. Charles Schmitt & Co.,*
 657 F. Supp.  1040 (S.D.N.Y. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*TransFirst Holdings, Inc. v. Phillips,*
 No. 3:06-CV-2303-P, 2007 U.S. Dist. LEXIS 36590
 (N.D. Tex. May 18, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Trollinger v. Tyson Foods,*
 370 F.3d 602 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6, 11, 14

*Trollinger v. Tyson Foods, Inc.*,
   No. 4:02-CV-23, 2007 U.S. Dist. LEXIS 38882
   (E.D. Tenn. May 29, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15, 16, 17, 18, 19, 21,
   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23, 25, 26, 28, 29, 35

*United States v. Elliott*,
   571 F.2d 880 (5th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 26

*United States v. Goldin Indus.*,
   219 F.3d 1271 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Neapolitan*,
   791 F.2d 489 (7th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*United States v. Palumbo Bros.*,
   145 F.3d 850 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Turkette*,
   452 U.S. 576 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 20, 23

*Vaca v. Sipes*,
   386 U.S. 171 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Williams v. Mohawk Indus., Inc.*,
   465 F.3d 1277 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . . 5, 8, 9, 10, 11, 12, 14, 15, 16, 17,
   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23, 24, 25, 26, 27, 28, 31, 32

## **STATUTES**

8 U.S.C. § 1324 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11, 12, 13, 14, 31

18 U.S.C. § 1961 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 24, 33

18 U.S.C. § 1962 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 24, 32, 33, 34

18 U.S.C. § 1964 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

18 U.S.C. § 1965 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

## **FEDERAL RULES OF CIVIL PROCEDURE**

FRCP 8 ........................................................... 3, 13, 34

FRCP 9 ............................................................... 11

FRCP 12 .......................................................... 3, 16, 26

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **BLANCA VALENZUELA, MARGIE SALAZAR, JOSE A. SERRATO, JOSIE RENDON, CLARA TOVAR, CONSUELO ESPINO, MARIA AVILA, ERNESTINA NAVARRETTE, MARIA E. MUNOZ, AMANDA SALCIDO, CANDELARIO G. ORTEGA, MARIA ORTIZ, JOSE OLIVA, RAFAELA CHAVEZ, ELODIA ARROYO, SUSANA CARDIEL, GRACIE RIOS, AND LEONEL RUIZ, individually and on behalf of all others similarly situated** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| **Plaintiffs,** | §<br>§ | **Civil Action No. 3-06CV2322-N** |
| **VS.** | §<br>§ | |
| **SWIFT BEEF COMPANY, INC. D/B/A SWIFT COMPANY, SWIFT & COMPANY, HICKS, MUSE, TATE & FURST, INC., HM CAPITAL PARTNERS OF DALLAS, LLC and JOHN DOES I-V** | §<br>§<br>§<br>§<br>§<br>§ | |
| **Defendants.** | §<br>§ | |

**PLAINTIFFS' RESPONSE TO SWIFT & COMPANY AND SWIFT
BEEF COMPANY'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

Pursuant to Federal Rule of Civil Procedure 12, Plaintiffs hereby file their Response to

Defendants Swift & Company and Swift Beef Company's (the "Swift Defendants") Motion to

Dismiss and Brief in Support ("Motion to Dismiss") seeking dismissal of Plaintiffs' First

Amended Complaint (the "Complaint"). In support thereof, Plaintiffs respectfully state as

follows:

## I. PRELIMINARY STATEMENT

The Swift Defendants have moved to dismiss Plaintiffs' Complaint on the grounds that

the Court lacks subject matter jurisdiction over the case, Plaintiffs failed to join indispensable

---

parties, and the Complaint fails to state a RICO claim.  For the reasons discussed below, the Swift Defendants' motion should be denied in its entirety.

First, the National Labor Relations Board's ("NLRB") primary jurisdiction over certain labor-related claims does not deprive federal courts of jurisdiction over cases alleging that employers violated the RICO statute by hiring and harboring illegal immigrants to depress wages because (i) RICO is an independent federal remedy and (ii) the labor questions are collateral issues.

Second, the existence of collective-bargaining agreements does not establish the local unions as Plaintiffs' exclusive representatives in all wage-related litigation.  This case involves damages for alleged violations of RICO—not an alleged breach of a collective bargaining agreement.  Therefore, the unions are not indispensable parties.

Third, Plaintiffs' Complaint satisfies RICO's proximate cause standard by alleging that Defendants hired and harbored illegal immigrants to keep labor costs as low as possible and, as a result, Plaintiffs' wages were lower than they would be if Defendants had not engaged in that illegal conduct.

Fourth, Plaintiffs' Complaint sufficiently pleads each and every element necessary to state a claim under the RICO statute, including:

- The Swift Defendants committed numerous RICO predicate acts by participating in an ongoing scheme to hire and harbor illegal immigrants in violation of RICO and the Immigration and Naturalization Act ("INA");

- Two distinct, ongoing RICO enterprises—the "Wrongful Documentation Enterprise" and the "Swift Enterprise"—were used to perpetrate an ongoing scheme to hire and harbor illegal immigrants;

- The Swift Defendants participated in the operation or management of the "Wrongful Documentation Enterprise";

- The Swift Defendants invested their racketeering income in a RICO enterprise by using the money they saved by paying lower wages to pay third-party recruiters to find more illegal workers in violation of § 1962(a) of the RICO statute;

- The Swift Defendants acquired or maintained an interest in the "Wrongful Documentation Enterprise" in violation of § 1962(b) of the RICO statute and Plaintiffs' injuries (in the form of lower wages) resulted from the Swift Defendants acquisition or control of that enterprise; and

- The Swift Defendants engaged in a pattern of racketeering activity by engaging in an ongoing scheme to hire and harbor illegal immigrants.

<u>Fourth</u>, this Court should retain supplemental jurisdiction over Plaintiffs' state-law claims because the Complaint states a claim for violations of the RICO statute.

<u>Fifth</u>, although Plaintiffs believe that the Complaint easily satisfies Rule 8's liberal notice pleading standard, Plaintiffs are willing to file an amended complaint if the Court determines that a more definite statement is required.

## II.  ARGUMENT AND AUTHORITIES

**A.    The National Labor Relations Board's Primary Jurisdiction Over Certain Labor Issues Does Not Deprive this Court of its Subject Matter Jurisdiction Over this Case Because the Labor Issues Are Collateral.**

The Swift Defendants contend that this case should be dismissed under Rule 12(b)(1) because of the NLRB's primary jurisdiction over certain labor-related disputes.   (Motion to Dismiss at 5-7.)  This argument should be rejected because federal courts may decide labor disputes that emerge as collateral issues in cases brought under independent federal remedies. *Connell Constr. Co. v. Plumbers & Steamfitters Local Union No. 100*, 421 U.S. 616, 626 (1974). Following *Connell*, the Sixth and Seventh Circuits have already held that the NRLB's primary jurisdiction over certain labor-related claims did not deprive federal courts of jurisdiction over cases like this.  More specifically, those circuits have held federal courts have jurisdiction in cases in which plaintiffs allege that employers violated the RICO statute (by hiring and harboring

illegal immigrants to depress wages) because (i) RICO is an independent federal remedy and (ii) the labor questions were collateral issues. *Trollinger v. Tyson Foods*, 370 F.3d 602, 610 (6th Cir. 2004); *Baker v. IBP, Inc.*, 357 F.3d 685, 689-90 (7th Cir. 2004).

Unable to distinguish *Trollinger* and *Baker*, the Swift Defendants contend that the decisions were incorrectly decided. <u>First</u>, the Swift Defendants argue that the *Baker* Court improperly relied, in part, on *United States v. Palumbo Bros.*, 145 F.3d 850, 861 (7th Cir. 1998) because that case involved a criminal prosecution under the RICO statute. (Mot. to Dismiss at 6.) Such reliance was proper because the predicate offenses in both cases were federal crimes (i.e., alleged violations of § 274 of the INA) other than violations of the labor laws. *See Baker*, 357 F.3d at 689. Moreover, *Baker*'s holding is consistent with the well-established principle that federal courts may decide disputes brought under independent federal remedies even if the disputes involve collateral labor issues. *Id.* at 690 (citing *Connell*, 421 U.S. at 626).

<u>Second</u>, the Swift Defendants maintain that *Baker* and *Trollinger* were incorrectly decided because the issues in those cases (i.e., RICO predicate offenses, causation, and damages) were intertwined with the collective bargaining process and, thus, within the NLRB's primary jurisdiction. (Mot. to Dismiss at 7.) But the Swift Defendants cite no authority for this proposition. (*See id.*) The Swift Defendants' argument is not only at odds with *Baker* and *Trollinger*, but is also inconsistent with numerous cases holding that federal courts may decide collateral labor-law questions in cases brought under independent federal remedies. *Connell*, 421 U.S. at 626 (holding that federal courts may decide collateral labor-law questions in antitrust suits); *Commun. Workers of Am. v. Beck*, 487 U.S. 735, 743-44 (1988) (federal court could decide whether activity is unfair labor practice under NLRA when issue was raised as defense to claim over which federal court had jurisdiction); *Britt v. Grocers Supply Co.*, 978 F.2d 1441,

1448-49 (5th Cir. 1992) (holding that the plaintiffs' ADEA claims were not preempted by NLRA because traditional preemption analysis does not apply when two federal statutes conflict).  This Court should follow the overwhelming weight of authority—including two circuit court decisions directly on point—and hold that the Plaintiffs' RICO claims are not preempted by the NLRA.

**B.     The Unions are Not Indispensable Parties, But Can Be Joined if Necessary.**

**1.     <u>The Unions Are Not Indispensable Parties</u>.**

Relying on the Seventh Circuit's decision in *Baker*, the Swift Defendants contend that the local unions representing the Swift employees are indispensable parties to this suit.  (Mot. to Dismiss at 8-11 (citing *Baker*, 357, F.3d at 690-91 (dismissing plaintiffs' RICO claim because, *inter alia*, the plaintiffs failed to join their local union).)  But the Swift Defendants did not apprise this Court that the Sixth Circuit and Eleventh Circuits have disagreed with *Baker*'s analysis in RICO cases alleging that employers knowingly hired illegal immigrants to depress wages.  *See Trollinger*, 370 F.3d at 620-22 (disagreeing with *Baker* Court's conclusion that union was necessary party to RICO suit alleging that defendants depressed wages by hiring and harboring illegal immigrants); *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1285 (11th Cir. 2006) (noting that its holding that the plaintiffs' complaint stated a RICO claim conflicted with the Seventh Circuit's decision in *Baker*).

As explained by the *Trollinger* Court, the fundamental flaw in *Baker* is the Seventh Circuit's misplaced reliance on *Vaca v. Sipes*, 386 U.S. 171, 186 (1967) for the proposition that the union was a necessary party to the plaintiffs' RICO action.  *Baker*, 357 F.3d at 690-91 (citing *Vaca*, 386 U.S. at 186).  In *Vaca*, the Supreme Court held that an employee cannot sue for an alleged violation of his collective bargaining agreement containing an exclusive contractual remedy without exhausting the contractual grievance process.  *Vaca*, 386 U.S. at 186; *see also*

*Trollinger*, 370 F.3d at 621 (discussing the Baker Court's reliance on *Vaca*).  In *Trollinger*, the Sixth Circuit concluded that *Vaca* did not make the union a necessary party case because the case involved alleged damages resulting from RICO violations, not an alleged breach of a collective bargaining agreement with an exclusive contractual remedy.  *Trollinger*, 370 F.3d at 621. Moreover, the *Trollinger* Court reasoned that the historical context in which the Labor Management Relations Act ("LMRA") was enacted indicates that Congress did not intend to establish unions as employees' exclusive representative in all wage-related litigation.  *Id.* at 621.

Here, the existence of collective-bargaining agreements does not establish the local unions as Plaintiffs' exclusive representative in all wage-related litigation.  This case involves damages for alleged violations of RICO, not an alleged breach of a collective bargaining agreement.  Therefore, this Court should follow the Sixth Circuit's decision in *Trollinger* and reject the Swift Defendants' assertion that the local unions are indispensable parties.

### 2.    <u>The Unions Can Be Joined If Necessary Under 18 U.S.C. § 1965(d)</u>.

If the Court determines that the unions are indispensable parties, the unions can be easily joined as parties under the RICO statute's nationwide service of process provision.  *See* 18 U.S.C. § 1965(d).  Under § 1965(d), process in a RICO case "may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs."  The Swift Defendants contend that the unions are indispensable parties, but the unions cannot be joined under the RICO statute's nationwide service of process provision because the "ends of justice" do not require their joinder.  (Mot. to Dismiss at 9 (citing *Butchers' Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986).)  This argument is incorrect for two reasons.

<u>First</u>, the "ends of justice" limitation on the RICO statute's nationwide service is inapplicable to nationwide service under 18 U.S.C. § 1965(d).  *Bridge v. Invest Am., Inc.*, 748 F.

Supp. 948, 954 (D.R.I. 1990) (the "ends of justice" limitation in § 1965(b) is inapplicable to nationwide service under § 1965(d)); *Rolls Royce Motors, Inc. v. Charles Schmitt & Co.*, 657 F. Supp. 1040, 1055 n.10 (S.D.N.Y. 1987) (same). In *Butchers' Union*, 788 F.2d at 539, the Swift Defendants' authority for the "ends of justice" limitation on nationwide service, the plaintiffs argued that the court had jurisdiction over the defendants based on 18 U.S.C. § 1965(b). In that case, the Ninth Circuit rejected the plaintiffs' attempt to invoke § 1965(b) based on the "ends of justice" limitation found in that provision. *Id.* Critically, however, 18 U.S.C. § 1965(d)—the nationwide service provision at issue in this case—does not contain an "ends of justice limitation" and courts have refused to imply such a limitation, noting that "a section 1965(b) 'ends of justice' determination is proper only upon an allegation that venue is improper as to some defendants." *Bridge*, 748 F. Supp. at 953; *Rolls Royce Motors*, 657 F. Supp. at 1055 n.10. None of the Defendants have challenged venue; therefore, the Court need not engage in an "ends of justice" analysis.

Second, even if the "ends of justice" limitation were applicable, justice requires that the Court exercise jurisdiction over the local unions if the Court determines that they are necessary parties. *Bridge*, 748 F. Supp. at 952 (noting that even if "ends of justice" limitation applied, ends of justice required court to exercise jurisdiction over defendants because of desirability of having entire dispute litigated in one court). Without nationwide service under 18 U.S.C. § 1965(d), Plaintiffs may not be able to join the local unions as parties without filing separate lawsuits where each local union is located. Because of the desirability of having the entire dispute

litigated in one court, the ends of justice require the Court to exercise jurisdiction over the local

unions if they are necessary parties.  *Bridge*, 748 F. Supp. at 952.[1]

## C.    Plaintiffs' Complaint Satisfies RICO's Proximate Cause Standard.

Relying on the Supreme Court's decision in *Anza v. Ideal Steel Supply Corp.*, 126 S.Ct.

1991, 1996 (2006), the Swift Defendants contend that Plaintiffs' Complaint does not satisfy

RICO's proximate cause standard.  (Mot. to Dismiss at 11-14.)  This argument has been rejected

by the Second, Sixth, Ninth, and Eleventh Circuits in similar cases.  *Williams*, 465 F.3d at 1287-

91 (plaintiff satisfied RICO's proximate cause standard by alleging that defendant hired and

harbored illegal immigrants to keep labor costs as low as possible and, as a result, plaintiffs

wages were lower than they would be if defendants had not engaged in that illegal conduct);

*Trollinger*, 370 F.3d at 619 (same); *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1171-72 (9th

Cir. 2002) (same); *Commercial Cleaning Servs. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 383 (2d

Cir. 2001) (plaintiff satisfied RICO's proximate cause standard by alleging that defendant was

able to hire cheaper labor and compete unfairly by hiring illegal immigrants).[2]

---

[1] If this Court believes that unions are necessary parties that cannot be joined under the the RICO statute's nationwide service of process provision, the international unions can be joined as parties.  Although local unions have autonomy over certain local issues, the Swift Defendants concede that the international unions have the power to override the local unions on wages and other industry-wide issues.  (Dep. of Douglas Schult at 96:3-97:2, Appendix ("App.") at 355-357.)  The Swift Defendants do not contend that this Court lacks personal jurisdiction over the international unions.  (*See* Mot. to Dismiss at 7-11.)  Therefore, this Court could protect the interests of the unions, if any, in the outcome of this case by joining the international unions as parties.  In the unlikely event that this Court finds the local unions are necessary parties that cannot be joined under RICO's nationwide service provision, Plaintiffs respectfully request the opportunity to take jurisdictional discovery regarding the local unions' contacts with Texas.

[2] In *Baker*, 357 F.3d at 692, the Seventh Circuit identified proximate cause as a potential problem with the plaintiffs' case.  But the *Baker* Court did not decide that issue because it dismissed the case for other reasons.  *Id.*  Moreover, unlike in this case, the plaintiffs in *Baker* did not allege that the defendant depressed wages in the local community by hiring illegal aliens.  *Id.*  Instead, the plaintiffs alleged that hiring illegal immigrants enabled the defendant to pay lower wages than its competitors—an allegation that the Seventh Circuit believed was more difficult to attribute to particular violations of 8 U.S.C. § 1324 than an allegation that the violations depressed wages in the local community.  *Id.*

Critically, the Eleventh Circuit's decision in *Mohawk* addressed the precise issue raised by the Swift Defendants (i.e., whether the plaintiffs' allegations satisfied RICO's proximate cause standard in light of the Supreme Court's *Anza* decision). *Mohawk*, 465 F.3d at 1287-91. In that case, the district court held that the plaintiffs' claim that their wages were lower than they would be if the defendant had not hired illegal immigrants satisfied RICO's proximate cause standard and the Eleventh Circuit affirmed that decision. *Id.* at 1261-62. Subsequently, the Supreme Court vacated the Eleventh Circuit's decision and remanded the case for reconsideration in light of *Anza*. *Mohawk Indus. v. Williams*, 126 S. Ct. 2016 (2006). On remand, the Eleventh Circuit held that the plaintiffs' allegations (i.e., that the defendant depressed the wages it paid to legal worker by knowingly hiring and harboring illegal workers) satisfied *Anza*'s requirement that the alleged violation led to the plaintiffs' injuries. *Mohawk*, 465 F.3d at 1287-91.

Here, Plaintiffs allege that the defendants hired and harbored illegal immigrants to keep labor costs as low as possible and, as a result, the plaintiffs wages were lower than they would be if the defendants had not engaged in that illegal conduct. (Compl. ¶¶ 2, 42-48, 51, 65, 70-76.) These allegations are identical to the proximate cause allegations that the Eleventh Circuit found to be sufficient in Mohawk. *Mohawk*, 465 F.3d at 1287-91. Therefore, the Swift Defendants' assertion that Plaintiffs' proximate cause allegations are somehow insufficient is simply without merit.[3]

---

[3]Contrary to the Swift Defendants' assertion that there is an insufficient relationship between the illegal hiring scheme and a reduction in Plaintiffs' wages, the relationship between the supply of illegal immigrant labor and wages has been widely reported in the press. *Immigration Raids Could Affect Wages Prices*, The Kansan, Dec. 15, 2006, App. at 1-4 (agricultural economist noting that Swift would have to pay higher wages because the raids would decrease its access to cheap immigrant labor); Arnold Hamilton and Deborah Turner, *Town a Haven for Illegal Immigrants: Workers Are the Lifeblood of Cactus, Texas, But Most Are There Illegally*, Dallas Morning News, Nov. 19, 2006, App. at 358-367 (noting that wages have declined from $20 per hour to less than $12 per hour due to use of illegal immigrant labor); Sudeep Reddy, *Processing Plants' Dangers Don't Scare Off Migrants: One in 10 Workers Injured Each Year at Meatpacking Factories*, Dallas Morning News, Nov. 21, 2006, App. at 5-10 (use of

Moreover, the Swift Defendants' argument that Plaintiffs have not satisfied *Anza*'s proximate-cause requirements because other economic factors affect wage rates was considered and rejected in *Mohawk*. *Id.* at 1289.  The *Mohawk* Court held that the plaintiffs met the requirements of *Anza* by alleging that the defendant distorted the normal market forces in the local community by hiring numerous illegal immigrants.  *Id.*  That is precisely what Plaintiffs allege happened in this case:  the Swift Defendants distorted normal market forces by hiring numerous illegal immigrants in the communities where Swift's meat-packing plants are located. (Compl. ¶¶ 2, 42-48, 51, 65, 70-76.)[4]   These allegations are clearly sufficient to satisfy the proximate-cause requirements of the RICO statute.  *Mohawk*, 465 F.3d at 1289.

_____

illegal immigrants results in depressed wages and dangerous working conditions); Megan Feldman, *Ground Meat: Native-Born and Immigrants Both Get Bled at Swift's Beef Plant*, Dallas Observer, Vol. 27, No. 14, Apr. 5-11, 2007, App. at 11-18 (following the raids, starting wages at the Swift Defendants' plant in Cactus, Texas increased).

[4]In *Trollinger* and *Mendoza*, the courts not only rejected the defendants' arguments for dismissal based on the alleged difficulty and imprecision of calculating class-wide damages, but also certified class actions over similar objections.  *Trollinger v. Tyson Foods, Inc.*, No. 4:02-CV-23, Order (Docket No. 183) and Mem. (Docket No. 182) (E.D. Tenn. Oct. 10, 2006) (granting Plaintiffs' Mot. for Class Certification (Docket No. 123)), App. at 86-108; *Mendoza v. Zirkle Fruit Co.*, 222 F.R.D. 439, 446-47 (E.D. Wash. 2004) (same).  Specifically, the *Trollinger* and *Mendoza* courts rejected the defendants' arguments against class certification based on the alleged difficulty and imprecision of calculating damages on a class-wide basis because of differences between the processing plants and the jobs the individual employees performed.  *See id.*   In *Trollinger*, the plaintiffs' damages expert submitted declarations in support of the plaintiffs' motion for class certification stating that there are well-accepted economic models that can be used to calculate class-wide damages attributable to the alleged illegal hiring scheme.  (Br. in Supp. of Pls.' Mot. for Class Certification dated Aug. 5, 2005 (Docket No. 123), App. at 21-71; Pls.' Reply in Supp. of Mot. for Class Certification dated Sept. 28, 2005 (Docket No. 144), App. at 72-85.)  In *Trollinger*, a case involving virtually identical allegation as this case, the court granted the plaintiffs' motion for class certification based, in part, on its conclusion that the plaintiffs' expert provided a colorable methodology for calculating class damages.  (Mem. dated Oct. 10, 2006 at 19-20, App. at 87-108.)

**D.      Plaintiffs' Complaint Is Sufficient to State a Claim Under the RICO Statute.**[5]

   **1.      Plaintiffs' Complaint Adequately Pleads Violations of the Federal
            Immigration Laws, the Predicate Acts for Plaintiffs' RICO Claims.**

        The Swift Defendants contend that Plaintiffs' Complaint fails to adequately plead

violations of the INA, the predicate offenses for Plaintiffs' RICO claims.  (Mot. to Dismiss at 17-

18.)  The Swift Defendants' argument suffers from the same fatal defect as their proximate cause

argument—it ignores the fact that the Sixth, Ninth, and Eleventh Circuits have already held that

lawsuits alleging similar facts were sufficient to state a claim under RICO.  *Williams*, 465 F.3d at

1283 (holding that plaintiffs' allegation that defendant knowingly hired and harbored illegal

immigrants sufficiently stated predicate acts for plaintiffs' RICO claim); *Mendoza*, 301 F.3d at

1168 (same); *Trollinger*, 370 F.3d at 611 (knowingly hiring and harboring illegal immigrants are

predicate offenses under RICO).  These courts have recognized that complaints alleging that

defendants knowingly hired and harbored illegal aliens contain sufficient allegations of predicate

acts to state a claim under the RICO statute.  *Id.*

        In *Mohawk*, the Eleventh Circuit rejected a similar challenge to the sufficiency of the

plaintiff's allegations of RICO predicate acts.  *Mohawk*, 465 F.3d at 1283.  There, as here, the

plaintiffs alleged that the defendant violated § 274 of the INA (8 U.S.C. § 1324) by knowingly

hiring and harboring illegal immigrants.  The Eleventh Circuit held that the allegations in that

case were sufficient allegations of RICO predicate acts:

        Plaintiffs allege that Mohawk has violated and continues to violate:  (1) 8 U.S.C.
        § 1324(a)(3)(A), which makes it a federal crime to "knowingly hire for
        employment at least 10 individuals with actual knowledge that the individuals are

_____

        [5]The Swift Defendants contend that the Plaintiffs have not pleaded their fraud-based predicate acts with
particularity.  (*See* Mot. to Dismiss at 15-17.)  To the extent that Plaintiffs' Complaint is read to allege fraud as a
predicate act under the RICO statute, Plaintiffs are not asserting fraud as a predicate act at this time and agree to
amend their Complaint to remove any fraud-based predicate acts without prejudice.  Therefore, the Swift
Defendants' contention that Plaintiffs' Complaint fails to meet the requirements of Rule 9(b) is moot.

aliens" during a twelve-month period; (2) 8 U.S.C. § 1324(a)(1)(A)(iii), which makes it a federal crime to "harbor, or shield from detection" aliens that have illegally entered the United States. . . .  Consequently, we conclude that the plaintiffs have properly alleged a "pattern of racketeering activity."

*Id.*

Likewise, in *Mendoza*, the Ninth Circuit was "unpersuaded" by the defendants' "hyper-technical" argument that the plaintiffs' allegation that the defendants knowingly hired and harbored illegal immigrants was insufficient to show a RICO predicate act:

> The district court held that the "Illegal Immigrant Hiring Scheme" as pleaded involved a predicate RICO act, knowingly hiring undocumented workers in violation of Immigration and Naturalization Act § 274.  *We are unpersuaded by the growers' argument that the district court erred in this respect.  Their argument rests on a hypertechnical reading of the complaint inconsistent with the generous notice pleading standard*.  The complaint alleges that the defendants had knowledge of illegal harboring "and/or" smuggling.  Even if knowledge of smuggling were required by the statute, an issue about which we express no opinion, the complaint easily contains this allegation.

*Mendoza*, 301 F.3d at 1168 (emphasis added; internal citations omitted).

Here, as in *Mohawk* and *Mendoza*, Plaintiffs' Complaint contains sufficient allegations of RICO predicate acts—that the Swift Defendants committed acts of racketeering by knowingly hiring and harboring illegal immigrants.  (Compl. ¶¶ 37-48.)[6]  First, contrary to the Swift Defendants' assertion, the Complaint contains detailed factual allegations regarding the Swift Defendants' predicate RICO acts, including:

- The practice of knowingly hiring and harboring more than twenty illegal immigrants each calendar year (*id.* ¶¶ 37-48, 60-69);

---

[6]On December 12, 2006, U.S. Immigration and Customs Enforcement arrested 1,282 illegal immigrants in raids at Swift plants in six states.  Sudeep Reddy, *Focus of Raids Shifts to ID Theft: Immigration Officials Accenting U.S. Victims with Change of Tactics*, Dallas Morning News, Dec. 14, 2006, App. at 368-371.)  Federal prosecutors charged numerous illegal immigrants with using stolen identities of legal U.S. residents to obtain employments at Swift.  (*Id.*; Press Release, *30 Individuals Indicted on Immigration and Identity Theft Charges*, United States Attorney's Office, Southern District of Iowa (Dec. 19, 2006), App. at 130-132 (listing the illegal immigrants charged with using stolen identification documents to obtain employment at Swift's Marshalltown, Iowa plant).  The vast majority of these criminal charges have resulted in guilty pleas or jury verdicts of guilty.  (*See, e.g.*, App. at 133-263.)

- The use of the government's Basic Pilot internet verification program to evade the requirements of the Immigration Reform and Control Act (*id.* ¶¶ 40-41);

- The use of third parties (i.e., "coyotes" or documentation middlemen) to recruit and obtain fake immigration papers for individuals that the Swift Defendants knew were illegal immigrants (*id.* ¶¶ 60-65);

- Instructing Swift employees to falsify employment verification documents (*id.* ¶ 38); and

- The "blind eye policy" of ignoring obvious facts indicating that the identification documents do not relate to the individuals tendering them (*Id.*).[7]

These allegations concerning the Swift Defendants' predicate acts are sufficient to satisfy Rule 8's liberal notice pleading requirements. *Mendoza*, 301 F.3d at 1168 (concluding that the plaintiffs satisfied Rule 8's liberal notice pleading requirements by alleging that the defendants knowingly hired illegal immigrants).

Second, the Complaint specifically identifies the statutory provisions that make knowingly hiring and harboring illegal immigrants RICO predicate acts: (i) § 274 of the INA (codified in 8 U.S.C. § 1324) (which makes it a crime to knowingly hire or harbor illegal immigrants) and (ii) 18 U.S.C. § 1961(1)(F) (which makes the crimes of hiring and harboring illegal immigrants RICO predicate acts). (Compl. ¶¶ 37, 42-48.) The Swift Defendants' argument that the Complaint is somehow deficient because Plaintiffs allegedly failed to provide

---

[7]After Plaintiffs filed their Complaint, federal prosecutors charged Christopher Todd Lamb, the assistant human resources manager in the Swift Defendants' Marshalltown, Iowa plant, with violating 8 U.S.C. § 1324(a)(1)(A)(iii) by harboring an illegal immigrant with knowledge or knowing disregard that the immigrants entered the United States illegally. (Criminal Compl., *United States v. Lamb*, No. 4:07-MJ-103 (S.D. Iowa July 6, 2007) (Docket No. 1), App. at 109-120.) The affidavit submitted in connection with the criminal complaint describes an undercover sting operation in which Lamb was caught knowingly helping an illegal immigrant get re-hired at the Swift plant using false identity documents. (*Id.*) Federal prosecutors also charged a union official at the Swift Defendants' Marshalltown, Iowa plant with knowingly harboring illegal immigrants in violation of 8 U.S.C. § 1324(a)(1)(A)(iii). (Indictment, *United States v. Pereyra-Gabino*, No. 4:07-CR-088 (S.D. Iowa Apr. 25, 2007) (Docket No. 2), App. at 121-122; Br. in Supp. of Gov't's Resistance to Defs.' Mot. to Dismiss (Docket No. 12), App. at 123-129 (describing the defendant's speech to prospective illegal employees of Swift in which he describes how to obtain employment at Swift using false identity documents).) If the Court believes that Plaintiffs are required to plead additional facts regarding the Swift Defendants' illegal hiring scheme, Plaintiffs can amend their Complaint to incorporate the information in these criminal complaints.

pinpoint cites to the subsections of 8 U.S.C. § 1324 that make hiring and harboring illegal immigrants federal crimes is inconsistent with the applicable notice pleading requirements and, therefore, without merit.[8]

**2.**     **Plaintiffs' Complaint Adequately Pleads a RICO Enterprise.**

Even though the Second, Sixth, Ninth, and Eleventh Circuits have held that similar complaints were sufficiently specific to state a claim under the RICO, the Swift Defendants' eleven-page discussion of Plaintiffs' alleged failure to "plead a cognizable RICO" enterprise does not discuss or attempt to distinguish any of these cases.  (Mot. to Dismiss at 18-29.)[9]  Instead, the Swift Defendants' enterprise argument relies on inapposite cases and dicta from the Seventh Circuit's *Baker* decision.  (*Id.*)  As discussed in detail below, the allegations regarding the RICO enterprise in Plaintiffs' Complaint are sufficient to state a RICO claim.

---

[8]In the Complaint, Plaintiffs specifically identify 8 U.S.C. § 1324(a)(1)(A)(iii) as the provision of the INA prohibiting harboring illegal immigrants with knowledge or knowing disregard that the immigrants entered the United States illegally.  (Compl. ¶ 46.)  The Complaint does not, however, specifically reference the subsection in 8 U.S.C. § 1324—§ 1324(a)(3)(A)—that prohibits knowingly hiring illegal immigrants.  Instead, the Complaint refers to 8 U.S.C. § 1324 as a whole and notes that the Swift Defendants have violated § 274 of the INA (i.e., 8 U.S.C. § 1324) by knowingly hiring illegal immigrants.  (Compl. ¶¶ 37, 45, 47-48.)  Under the applicable notice pleading standard, Plaintiffs do not believe that their Complaint is deficient because it does not specifically reference the subsection of 8 U.S.C. § 1324 prohibiting the hiring of illegal immigrants.  *Mendoza*, 301 F.3d at 1168 (applying the liberal notice pleading standard to the plaintiffs' allegation that the defendants committed RICO predicate acts by knowingly hiring illegal immigrants in violation of § 274 of the INA).  Nevertheless, Plaintiffs can amend their Complaint to add a reference to 8 U.S.C. § 1324(a)(3)(A) if the Court determines that Plaintiffs are required to reference the specific subsection of § 1324 that prohibits knowingly hiring illegal immigrants.

[9]*Mohawk*, 465 F.3d at 1284-85 (concluding that plaintiffs' complaint sufficiently pleaded RICO enterprise); *Trollinger*, 370 F.3d at 622; *Mendoza*, 301 F.3d at 1174-75; *Commercial Cleaning*, 271 F.3d at 387 (RICO allegations were not so insufficient to warrant dismissal without leave to replead).  In light of the Swift Defendants' failure to direct the Court's attention to these cases as the duty of candor toward the tribunal requires, their assertion that Plaintiffs' counsel failed to comply with the duty to conduct an adequate pre-filing investigation is very surprising.  (*See* Mot. to Dismiss at 19 n.86.)

a.      **Plaintiffs' Enterprise Allegations Are Sufficiently Specific.**

Plaintiffs allege the existence of two RICO enterprises: (i) the "Wrongful Documentation Enterprise" and the "Swift Enterprise." (Compl. ¶¶ 60-69.) The Swift Defendants complain that the Plaintiffs' allegations concerning these enterprises are insufficiently specific. The Supreme Court has held that the existence of an enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). The definitive factor in determining the existence of a RICO enterprise is the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes, that is, the pattern of racketeering activity requisite to the RICO violation. *United States v. Elliott*, 571 F.2d 880 (5th Cir. 1978). The enterprise allegations in Plaintiffs' Complaint—which are similar to enterprise allegations held to be sufficient in *Mohawk* and *Trollinger*—clearly meet this standard. *See Mohawk*, 465 F.3d at 1283-86 (holding that the plaintiffs' enterprise allegation were sufficient to state a RICO claim); *Trollinger v. Tyson Foods, Inc.*, No. 4:02-CV-23, 2007 U.S. Dist. LEXIS 38882, at *32-44 (E.D. Tenn. May 29, 2007) (same).

1)      **The "Wrongful Documentation Enterprise."**

Plaintiffs allege that the "Wrongful Documentation Enterprise" (i) is an association-in-fact enterprise consisting of Defendants and third-party "documentation middlemen" used to violate federal immigration laws by hiring and harboring illegal immigrants using fake identification documents. (Compl. ¶¶ 60-65.)[10] The Swift Defendants contend that the Complaint contains insufficient allegations regarding the "Wrongful Documentation Enterprise" because the

---

[10] The "documentation middlemen" referred to in Plaintiffs' Complaint are individuals in the business of illegally trafficking in illegal immigrants. These individuals are sometimes referred to as "coyotes."

Complaint does not (i) specifically identify "documentation middlemen" and "Individual Defendants" and (ii) does not describe the role each defendant played in the RICO conspiracy. (Mot. to Dismiss at 19-21.)  For the reasons discussed below, Plaintiffs' allegations regarding the "Wrongful Documentation Enterprise" sufficiently alleges the existence of a RICO enterprise.

"To establish an association-in-fact enterprise, a plaintiff must show evidence of an ongoing organization, formal or informal, and evidence that the various associates function together as a continuing unit."  *Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir. 1995) (reversing district court's dismissal of plaintiff's complaint because complaint sufficiently alleged existence of association-in-fact enterprise).  Here, Plaintiffs' allegations regarding the "Wrongful Documentation Enterprise" are similar to allegations that sufficiently alleged the existence of association-in-fact enterprises in *Mohawk* and *Trollinger*.  *Mohawk*, 465 F.3d at 1283-86; *Trollinger,* 2007 U.S. Dist. LEXIS 38882, at *32-44.

In *Mohawk*, the plaintiffs alleged that the defendant and third-party temp agencies/ recruiters conspired to violate federal immigration laws, destroy documentation and harbor illegal workers.  *Mohawk*, 465 F.3d at 1284.  With one exception, none of the temp agencies/recruiters were specifically identified in the complaint.  *See id.*  Rejecting the defendants' argument that the plaintiffs' enterprise allegations were insufficiently specific, the Eleventh Circuit held that the plaintiffs sufficiently alleged the existence of an association-in-fact enterprise consisting of the defendant and the third-party temp agencies/recruiters:

> Given the Rule 12(b)(6) stage of the litigation, the plaintiffs' complaint must be taken as true, and it has sufficiently alleged an "enterprise" under RICO; that is an association-in-fact between Mohawk and third-party recruiters.  This Court has never required anything other than a "loose or informal" association of distinct entities.  Mohawk and the third-party recruiters are distinct entities that, at least according to the complaint, are engaged in a conspiracy to bring illegal workers into this country for Mohawk's benefit.  As such, the complaint sufficiently alleges an enterprise under RICO.

*Id.*

Critically, nothing in *Mohawk* suggests the complaint was deficient because it did not specifically name the temp agencies/recruiters and Mohawk employees involved in the conspiracy.  *See id.*  Likewise, in *Trollinger*, the district court held that the plaintiffs' allegations of an association consisting of Tyson Foods and unidentified temp agencies supplying illegal immigrants to Tyson Foods for a fee sufficiently alleged the existence of a RICO enterprise. *Trollinger,* 2007 U.S. Dist. LEXIS 38882, at *32-38.  Moreover, nothing in either opinion suggests that the complaints contained insufficient allegations concerning the role that each person or entity played in the alleged enterprises.  *See id.*  Here, Plaintiffs' allegations concerning the "Wrongful Documentation Enterprise" are virtually identical to the enterprise allegations in *Mohawk* and *Trollinger*.  (*See* Compl. ¶¶ 60-65.)  Therefore, the Swift Defendants' contention that the Complaint contains insufficient allegations regarding the "Wrongful Documentation Enterprise" is simply without merit.[11]

---

[11]Although Plaintiffs believe that their allegations regarding the "Wrongful Documentation Enterprise" are sufficiently specific, Plaintiffs can amend  their Complaint to plead additional facts regarding the "documentation middlemen," the Swift employees involved in the RICO conspiracy, and the roles played by the participants in the RICO enterprise (which Plaintiffs discovered after they filed their Complaint) if the Court determines that Plaintiffs' enterprise allegations are insufficiently specific.  After Plaintiffs filed their Complaint, federal prosecutors charged a Swift's human resources manager and a Swift union official with knowingly helping illegal immigrants use fake identity documents to obtain employment at Swift.  (Criminal Compl., *United States v. Lamb*, No. 4:07-MJ-103 (S.D. Iowa July 6, 2007) (Docket No. 1), App. at 109-120; Indictment, *United States v. Pereyra-Gabino*, No. 4:07-CR-088 (S.D. Iowa Apr. 25, 2007) (Docket No. 2), App. at 121-122; Br. in Supp. of Gov't's Resistance to Defs.' Mot. to Dismiss (Docket No. 12), App. at 123-129.)  If the Court believes that Plaintiffs are required to plead additional facts regarding the Swift Defendants' illegal hiring scheme, Plaintiffs will amend their Complaint to incorporate the information in these criminal complaints.  Since Plaintiffs filed their Complaint, Plaintiffs have also uncovered additional information regarding the "documentation middlemen" involved in the "Wrongful Documentation Enterprise."  But, as Plaintiffs' counsel advised the Court at the July 12, 2006 status conference, Plaintiffs need to undertake formal discovery to fully uncover and expose the identities of the "documentation middlemen."

2)      The "Swift Enterprise."

Plaintiffs also allege that the "Individual Defendants" (i.e., Swift management) conspired to carry out the illegal hiring scheme (using third-party documentation middlemen) and, therefore, conducted Swift's affairs in a way that violated the RICO statute.  (Compl. ¶¶ 66-69.)  The Swift Defendants contend that Plaintiffs' allegations concerning the "Swift Enterprise" are insufficient because:  (i) the allegations do not contain enough factual details; (ii) the Swift Facilities (i.e., Swift's processing plants) are inanimate objects; and (iii) Swift is not named as a participant in the "Swift Enterprise."  (Mot. to Dismiss at 19-21.)  This argument conflicts with a recent decision in *Trollinger* denying the defendant's motion to dismiss similar allegations concerning the "Tyson Enterprise."  *Trollinger,* 2007 U.S. Dist. LEXIS 38882, at *41-44.

First, Plaintiffs' allegations regarding the "Swift Enterprise" sufficiently allege a RICO enterprise.  In *Trollinger*, the court interpreted similar allegations concerning the "Tyson Enterprise"—an alleged conspiracy to carry out a scheme to hire illegal immigrants—as alleging that the individual defendants were conducting the affairs of Tyson in a way that violated RICO.  *Id.* at *43.  Not surprisingly, the court held that the plaintiffs' allegations were sufficient to bring the enterprise "into the realm of RICO."  *Id.*; *see also Cedric Kusher Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) (noting that "an employee who conducts the affairs of a corporation through illegal acts comes within the terms of a statute that forbids 'any person' unlawfully to conduct an 'enterprise'"); *Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007) (allegation that owner of corporation conducted the corporation's affairs through a pattern of racketeering activity stated a RICO claim).  Here, Plaintiffs are making precisely the same allegations about the "Swift Enterprise"—that Swift management participated in a conspiracy (using Swift employees and third-party documentation middlemen) to carry out a scheme to hire illegal immigrants.  (Compl.

¶¶ 60-69.)  For the reasons discussed in *Trollinger*, these allegations sufficiently allege a RICO enterprise.  *Trollinger,* 2007 U.S. Dist. LEXIS 38882, at *41-44.[12]

Second, contrary to the Swift Defendants' assertion, Plaintiffs do not allege that Swift's processing plants, standing alone, constitute a RICO enterprise.  (*See* Mot. to Dismiss at 18 n.81.) Instead, as discussed above, Plaintiffs' allegations concerning the "Swift Enterprise" relate to Swift management's participation in a RICO conspiracy to depress wages by hiring and harboring illegal immigrants.  (*See* Compl. ¶¶ 60-69.)

Third, the Swift Defendants' contention that the "Swift Enterprise" does not involve Swift is inconsistent with the most basic principle of corporate law—that a corporation is only capable of acting through its agents.  *Cedric Kusher*, 533 U.S. at 165.  Here, Swift's agents (i.e., Swift management) carried out a scheme to depress wages (and thereby enriched the Swift Defendants) by hiring and harboring illegal immigrants.  (*See* Compl. ¶¶ 60-69.)  Under these circumstances, Swift is legally responsible for the conduct of its management.  *Trollinger,* 2007 U.S. Dist. LEXIS 38882, at *41-44 (denying a motion to dismiss the plaintiffs' allegations concerning a RICO enterprise conducted by Tyson's management).

### b.  **Plaintiffs' Enterprise Allegations Sufficiently Allege Continuity.**

The Swift Defendants contend that Plaintiffs' Complaint fails to plead that the RICO enterprises had the requisite continuity because it does not allege:  (i) that the enterprise had an existence apart from the pattern of racketeering activity; (ii) an ongoing organization; or (iii) a

---

[12]Although Plaintiffs believe that their allegations regarding the "Swift Enterprise" are sufficiently specific, Plaintiffs can amend  their Complaint to plead additional facts regarding the involvement of Swift management in the conspiracy to carry out the illegal hiring scheme (using third-party "documentation middlemen") and, therefore, conducting Swift's affairs in a way that violated the RICO statute.  After Plaintiffs filed their Complaint, federal prosecutors charged a Swift human resources manager with knowingly helping illegal immigrants use fake identity documents to obtain employment at Swift.  (Criminal Compl., *United States v. Lamb*, No. 4:07-MJ-103 (S.D. Iowa July 6, 2007) (Docket No. 1), App. at 109-120.)  If the Court believes that Plaintiffs are required to plead additional facts regarding the Swift Defendants' illegal hiring scheme, Plaintiffs can amend their Complaint to incorporate the information in this criminal complaint.

hierarchical or consensual decision-making structure.  (Mot. to Dismiss at 21-22.)[13]  An enterprise is proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."  *United States v. Turkette*, 452 U.S. 576, 580 (1981).  "Continuity is both a closed and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that projects into the future with a threat of repetition."  *H.J., Inc. v. N.W. Bel. Tel. Co.*, 492 U.S. 229, 241 (1989) (holding that complaint should not have been dismissed because, under the facts alleged, it might be possible for the plaintiff to demonstrate the requisite continuity to prove his RICO complaint).  For the reasons discussed below, Plaintiffs' Complaint sufficiently alleges continuity.

First, Plaintiffs' Complaint sufficiently alleges that the "Wrongful Documentation Enterprise" and "Swift Enterprise" had an existence apart from the pattern of racketeering activity.  Plaintiffs allege:

- The "Wrongful Documentation Enterprise," an association-in-fact enterprise consisting of Defendants and third-party "documentation middlemen," conspired to violate federal immigration laws by hiring and harboring illegal immigrants using fake immigration documentation and that the third-party middlemen were paid a fee for their services.  (Compl. ¶¶ 60-65); and

- The Individual Defendants (i.e., Swift management) conspired to carry out the illegal hiring scheme (using third-party documentation middlemen) and, therefore, conducted Swift's affairs in a way that violated the RICO statute.  (Compl. ¶¶ 66-69).

---

[13] In support of this argument, the Swift Defendants rely on *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 244 (5th Cir. 1988), an inapposite case.  In that case, the Fifth Circuit concluded that there was no allegation that the defendants posed a continuous threat because the alleged predicate acts all related to a merger, "an otherwise legitimate and singular commercial endeavor."  *Id.* at 244.  Unlike *Delta Truck*, Plaintiffs' allegations do not relate to a single, discrete transaction.  (*See generally* Compl.)  Instead, the Complaint alleges the existence of a long-running and ongoing illegal hiring scheme.  (*See id.*)  In a similar case, the U.S. District Court for the Eastern District of Texas rejected the defendants' continuity arguments based on *Delta Truck*.  *See, e.g., Office Outfitters, Inc. v. A.B. Dick Co.*, 83 F. Supp. 2d 772, 777-78 (E.D. Tex. 2000) (distinguishing *Delta Truck* and concluding that defendants' claim that plaintiffs failed to allege pattern of racketeering activity was without merit).

In similar cases, courts have determined that similar complaints satisfied RICO's enterprise requirement.  *Mohawk*, 465 F.3d at 1277 (concluding that alleged association of defendant and third-party temp agencies/recruiters sufficiently alleged RICO enterprise); *Trollinger*, 2007 U.S. Dist. LEXIS 38882, at 36-38 (same); *Brewer v. Salyer*, No. CV F 06-01324 AWI DLB, 2007 U.S. Dist. LEXIS, at *33-34 (E.D. Cal. May 16, 2007) (plaintiff sufficiently alleged that RICO person (named defendant) was distinct from RICO enterprise (business the defendant used to carry out the illegal hiring scheme)).

Second, Plaintiffs' Complaint sufficiently alleges that the "Wrongful Documentation Enterprise" and "Swift Enterprise" are ongoing organizations.  (Compl. ¶¶ 38-69.)  Plaintiffs allege:

- A "long-term practice of violating the Immigration Reform and Control Act and the Immigration Nationality Act" using false identification documents and ignoring obvious facts indicating that the identity documents do not relate to the people tendering them (the "Blind Eye Policy") (Compl. ¶ 38);[14]

- "The Blind Eye Policy has been approved by the Swift Defendants and the Individual Defendants and has been a long-standing policy at the Swift Facilities" (*id.* ¶ 39);[15]

---

[14] Swift's long-term practice of hiring and harboring illegal immigrants is described in detail in the criminal complaint filed against Swift human resources manager Christopher Todd Lamb.  (Criminal Compl., *United States v. Lamb*, No. 4:07-MJ-103 (S.D. Iowa July 6, 2007) (Docket No. 1), App. at 109-120.)  The affidavit submitted in connection with the criminal complaint describes a tape-recorded conversation in which Lamb told an illegal immigrant who had used a false identity to obtain employment at Swift in 1995 how to get re-hired at the Swift plant using false identity documents.  (*Id.*)  If the Court believes that Plaintiffs are required to plead additional facts regarding the Swift Defendants' long-running illegal hiring scheme, Plaintiffs will amend their Complaint to incorporate the information in this criminal complaint.

[15] The Swift Defendants' "Blind Eye Policy" is evidenced by the criminal complaint against Lamb.  (Criminal Compl., *United States v. Lamb*, No. 4:07-MJ-103 (S.D. Iowa July 6, 2007) (Docket No. 1), App. at 109-120.)  For example, the affidavit submitted in support of the complaint describes a tape-recorded conversation in which Lamb stated, *inter alia*, that: (1) some of the illegal immigrants caught in the ICE enforcement action had come back to work at Swift and (2) he and Rosario Alvarez (another Swift human resources employee) stopped interviewing prospective employees after the raids to make it easier for illegal immigrants to get re-hired at Swift.  (*See id.*)  If the Court believes that Plaintiffs are required to plead additional facts regarding the Swift Defendants' "Blind Eye Policy," Plaintiffs will amend their Complaint to incorporate the information in this criminal complaint.

- • "The Swift Defendants have employed more than twenty (20) individuals each calendar year who did not have a legal right to work at the Swift Facilities, pursuant to the immigration and citizenship laws of the United States" (*id.* ¶ 42);[16]

- • "The Defendants have committed at least two acts of racketeering activity not separated by more than ten years since the enactment of RICO.  The Defendants' ongoing and systematic efforts to defraud those individuals who had the legal right to work at the Swift Facilities, including Plaintiffs, pose a threat of ongoing and continuing illegal activity" (*id.* ¶ 55); and

- • The Defendants used the "Wrongful Documentation Enterprise" and "Swift Enterprise" to carry out a long-term scheme to hire and harbor illegal immigrants in violation of RICO (*id.* ¶¶ 60-69).

In *Trollinger* and *Brewer*—cases involving allegations of similar long-running illegal hiring schemes—the courts held that the plaintiffs' allegations sufficiently alleged continuity. *Trollinger*, 2007 U.S. Dist. LEXIS 38882, at 36-38 (concluding that the plaintiffs satisfied the continuity requirement by alleging that Tyson had an ongoing relationship with temporary employment services with illegal workers); *Brewer*, 2007 U.S. Dist. LEXIS, at *31-34.  Here, Plaintiffs' allegations of a long-term and continuing scheme to hire and harbor illegal immigrants sufficiently plead closed and open-ended continuity—either of which is sufficient to satisfy RICO's continuity requirement.  *Brewer*, 2007 U.S. Dist. LEXIS, at *31-34 (plaintiff's allegations of four-year illegal hiring scheme sufficiently alleged closed and open-ended continuity).[17]

---

[16]Following the raids by federal immigration officials, many illegal immigrants were charged with using stolen identification documents to obtain employment at Swift. (*See, e.g.*, App. at 264-354.)  In the Appendix submitted in connection with this Response, Plaintiffs have submitted twenty such criminal complaints and, where applicable, the guilty pleas or jury verdicts relating to those complaints.  (*See id.*)  If the Court believes that Plaintiffs are required to plead additional facts regarding the illegal immigrants employed at the Swift Defendants' plants, Plaintiffs will amend their  Complaint to incorporate the information relating to these and other criminal complaints.

[17]The existence of closed and open-ended continuity is evidenced by the criminal complaint against Lamb. (Criminal Compl., *United States v. Lamb*, No. 4:07-MJ-103 (S.D. Iowa July 6, 2007) (Docket No. 1), App. at 109-120.)  The affidavit submitted in connection with the criminal complaint describes a tape-recorded conversation in which Lamb told an illegal immigrant who had used a false identity to obtain employment at Swift in 1995 how to get re-hired at the Swift plant using false identity documents after the raids by federal immigration officials.  (*Id.*)  If the Court believes that Plaintiffs are required to plead additional facts regarding continuity, Plaintiffs will amend their Complaint to incorporate the information in this criminal complaint.

Third, Plaintiffs' Complaint sufficiently alleges that the "Wrongful Documentation Enterprise" and "Swift Enterprise" function as continuing units. *Turkette*, 452 U.S. at 580 (enterprise is proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit"). In *Mohawk* and *Trollinger*, the courts held that the plaintiffs sufficiently alleged that the defendants and third-party recruiters functioned as continuing RICO units. *Mohawk*, 465 F.3d at 1283-84; *Trollinger*, 2007 U.S. Dist. LEXIS 38882, at *36-38. As discussed above, Plaintiffs' enterprise allegations are virtually identical to the allegations in *Mohawk* and *Trollinger*. (Compl. ¶¶ 60-69.) Accordingly, the Swift Defendants' argument that Plaintiffs' Complaint fails to sufficiently allege continuity is not well founded and should be rejected.

> **c.    Plaintiffs' Enterprise Allegations Sufficiently Allege that the RICO Persons Are Distinct from the RICO Enterprises.**

The Swift Defendants erroneously contend that the Complaint fails to allege that the RICO persons (i.e., the Defendants) are distinct from the RICO enterprises. (Mot. to Dismiss at 22-27.) This argument is inconsistent with well-settled RICO jurisprudence. As discussed in detail below, Plaintiffs sufficiently pleaded distinct RICO enterprises.

> **1)    The "Wrongful Documentation Enterprise" is Distinct from Defendants.**

The Swift Defendants argue that the Defendants and the "Wrongful Documentation Enterprise" are the same thing (i.e., that there is somehow no distinction between Defendants, on the one hand, and Defendants plus the documentation middlemen, on the other). (Mot. to Dismiss at 22-27.) Contrary to the Swift Defendants' assertion, the Complaint expressly alleges that the documentation middlemen are distinct from the Defendants <u>and</u> that Defendants' relationship with the documentation middlemen formed an association-in-fact RICO enterprise:

- "The Individual Defendants and the Swift Defendants entered into various agreements with persons to help get fake immigration documentation for individuals who the Defendants knew were illegal immigrants (hereinafter referred to as 'documentation middlemen')" (Compl. ¶ 60);

- "At all times relevant, the documentation middlemen, who were retained to help prospective employees obtain fake and false immigration documentation, maintained their own business operations and were not agents of the Swift Defendants and were paid a fee for their work performed" (Compl. ¶ 61);

- "The Defendants reviewed the fake immigration documentation obtained by the documentation middlemen and, pursuant to the Blind Eye Policy, accepted such documentation when they knew that such workers were illegal immigrants" (Compl. ¶ 62); and

- "Plaintiffs allege that each relationship with the documentation middlemen formed [an] association-in-fact RICO enterprise, pursuant to § 1964(4), with the purpose of recruiting hourly employees to the Swift Facilities. The Defendants participated in the affairs of each of these association-in-fact RICO enterprises by paying for services for workers [they] knew to be illegal immigrant labor" (Compl. ¶ 63).

In considering the Motion to Dismiss, the Court must assume the truth of Plaintiffs' allegations—not the Swift Defendants' characterization of the Complaint. *Mohawk*, 465 F.3d at 1284 ("Given the Rule 12(b)(6) stage of the litigation, the plaintiffs' complaint must be taken as true, and it has sufficiently alleged an enterprise under RICO; that is an association-in-fact enterprise between Mohawk and third-party recruiters). Under RICO, a person is "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). Thus, a corporation may be both a RICO person (i.e., a defendant) and also a part of an association-in-fact enterprise consisting of the corporation plus other corporations or natural persons:

> To find that a defendant cannot be part of the enterprise would undermine the purposes of the RICO statute. Indeed, RICO requires that the person be "employed by or associated with" the enterprise. 18 U.S.C. § 1962(c). Thus, a § 1962(c) defendant may be simultaneously a RICO person and a member of the RICO enterprise. Although RICO forbids the imposition of liability where the enterprise is nothing more than a subdivision or a part of the person, the requirement does not run the other way. Thus, the fact that each corporation was a defendant "person" and also part of the union of corporations which was the enterprise does not as a matter of law preclude a conviction.

*United States v. Goldin Indus.*, 219 F.3d 1271, 1276 (11th Cir. 2000); *TransFirst Holdings, Inc. v. Phillips*, No. 3:06-CV-2303-P, 2007 U.S. Dist. LEXIS 36590, at *13 (N.D. Tex. May 18, 2007) (recognizing that corporate defendant may be both be RICO person and, along with other corporations or individuals, member of association-in-fact enterprise).

Here, Plaintiffs have alleged such association-in-fact enterprises, contending that the documentation middlemen are third parties. The *Mohawk* and *Trollinger* courts concluded that the complaints alleging association-in-fact enterprises consisting of the defendants and third-party recruiters satisfied RICO's distinctness requirement. *Mohawk*, 465 F.3d at 1284 (the complaint satisfied RICO's distinctness requirement by alleging that the defendant third-party recruiters were distinct entities engaged in a conspiracy to bring illegal workers into the country for the defendant's benefit); *Trollinger*, 2007 U.S. Dist. LEXIS 38882, at 37-38 (same). Because the documentation middlemen are third parties (and, thus, distinct from Defendants), they, together with Defendants formed an association-in-fact enterprise under RICO. Tellingly, the Swift Defendants do not discuss or make any effort to distinguish *Mohawk* or *Trollinger* in their analysis of the distinctness issue. (Mot. to Dismiss at 22-27.) Instead, the Swift Defendants base their argument on *Baker* — a case that has been rejected by other courts in similar cases, and numerous cases involving different factual circumstances. (*Id.*)

a)   ***Baker* Is Distinguishable and Has Been Rejected by Courts in Similar Cases.**

Contrary to the Swift Defendants' assertion, the *Baker* Court did not hold that IBP and the third-party were not an association-in-fact enterprise. *Baker*, 357 F.3d at 691-92. In dicta, the Seventh Circuit observed that "it was not clear" how the association-in-fact had a common purpose because the recruiters wanted to be paid more for their services, but IBP would like to pay them less. *Id.* at 691. The Swift Defendants' reading of *Baker*'s dicta (which seems to require

that the purpose of the enterprise be the sole purpose of each member of the enterprise) is contrary to Fifth Circuit law, was expressly rejected by the Eleventh Circuit in *Mohawk*, and is inconsistent with the Sixth and Ninth Circuits, which have held that similar complaints stated a claim under RICO. *United States v. Elliot*, 571 F.2d 880, 898 (5th Cir. 1978) (concluding that "thread" tying the various members of enterprise together was the desire to make money); *Mohawk*, 465 F.3d at 1285-86 (rejecting *Baker* and concluding that the complaint sufficiently alleged that Mohawk and third-party recruiters had the common purpose of making money by providing illegal workers to Mohawk so that Mohawk could reduce its labor costs and the recruiters could get paid); *Mendoza*, 301 F.3d at 1171-75 (holding that similar allegations stated claim under RICO); *Trollinger*, 2007 U.S. Dist. LEXIS 38882, at *32-44 (holding that plaintiffs sufficiently pleaded RICO enterprise by alleging association-in-fact enterprise consisting of defendants and third-party recruiters).

> **b)** **The Swift Defendants' Other Distinctness Cases Are Distinguishable.**

Likewise, the other cases cited by the Swift Defendants are factually distinguishable and do not support the Swift Defendants' argument that this case should be dismissed for lack of distinctness. First, the Swift Defendants cite *Brittingham v. Mobil Corp.*, 943 F.2d 297, 299 (3d Cir. 1999) for the proposition that plaintiffs failed to sufficiently plead that Defendants are not distinct from the third-party recruiters. (Mot. to Dismiss at 24.) But, unlike this case, *Brittingham* involved a motion for summary judgment. *Brittingham*, 943 F.2d at 303. In *Brittingham*, the court affirmed summary judgment for the defendants, in part, because the plaintiffs did not produce evidence showing that the defendants and their advertising agencies formed a distinct enterprise. *Id.* at 303. Thus, *Brittingham* has no bearing on the issue of whether Plaintiffs have sufficiently alleged a distinct enterprise for purposes of Rule 12(b)(6). Moreover, even if *Brittingham* had involved a motion to dismiss, the Third Circuit subsequently disapproved of that

decision in *Jaguar Cars v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 263 (3d Cir. 1995).

Tellingly, the Swift Defendants failed to apprise this Court of the *Jaguar Cars* decision.  (*See*

Mot. to Dismiss at 22-27.)

        Second, the Swift Defendants rely on the Seventh Circuit's decision in *Fitzgerald v.*

*Chrysler Corp.*, 116 F.3d 225, 228 (7th Cir. 1997) to support their argument that Plaintiffs failed

to sufficiently plead distinctness.  (Mot. to Dismiss at 24-25.)  In *Fitzgerald*, the plaintiff alleged

that Chrysler was the RICO person and its subsidiaries and dealers constituted the enterprise.

Affirming the dismissal of the RICO claim, the Seventh Circuit held that Chrysler's dealers and

subsidiaries were too akin to employees to hold Chrysler liable under RICO.  *See Fitzgerald*, 116

F.3d at 228.  This case, as alleged, is distinguishable from *Fitzgerald*.  (Compl. ¶¶ 60-69.)

Plaintiffs claim that the third-party documentation middlemen are independent from Defendants,

and that the independent documentation middlemen were integral to the RICO conspiracy.  (*Id.*)

For purposes of a motion to dismiss, these allegations are sufficient to show that Defendants and

the enterprise are distinct.  *Mohawk*, 465 F.3d at 1286; *Burstein v. First Penn-Pacific Life Ins.*

*Co.*, No. 01-985-CIV-Graham/Turnoff, 2002 U.S. Dist. LEXIS 28115, at *18-19 (S.D. Fla. Feb.

12, 2002) (distinguishing *Fitzgerald* and holding that plaintiff's allegation that defendant and

independent insurance brokers constituted RICO enterprise was sufficient to show defendant and

enterprise were distinct).

        Third, the Swift Defendants incorrectly cite *Atkinson v. Anadarko Bank & Trust Co.*, 808

F.2d 438, 441 (5th Cir. 1987), a case involving a judgment notwithstanding the verdict, as

supporting their argument that Plaintiffs failed to adequately plead distinctness.  (Mot. to Dismiss

at 25.)  The *Atkinson* Court held that the *evidence* was insufficient to establish that the defendant

bank, its holding company, and employees were associated in any manner apart from the activities

of the bank.  *Id.* at 441.  As discussed above, the *Atkinson* Court's determination that there was insufficient evidence of a distinct RICO enterprise has no bearing on the issue before this Court: whether Plaintiffs have sufficiently pleaded a distinct RICO enterprise for purposes of a Rule 12(b)(6) motion.  Here, Plaintiffs' allegation that Defendants and the third-party documentation middlemen formed an association-in-fact enterprise to hire and harbor illegal immigrants is sufficient to survive a motion to dismiss.  *Mohawk*, 465 F.3d at 1284; *Trollinger*, 2007 U.S. Dist. LEXIS 38882, at 37-38.

> **2)** **The "Swift Enterprise" is Distinct from the Individual Defendants**.

To the extent that the Swift Defendants also contend that the "Swift Enterprise" is not distinct from the Individual Defendants (which is not clear from their briefing) (*see* Mot. to Dismiss at 22-27), their argument is inconsistent with a controlling Supreme Court case.  *Cedric Kushner*, 533 U.S. at 163.  In *Cedric Kushner*, the Supreme Court held that a corporate owner or employee who conducts the corporation's affairs in a RICO-forbidden way is distinct from the corporation for purposes of the RICO statute:

> While accepting the "distinctness" principle, we nonetheless disagree with the appellate court's application of that principle to the present circumstances – circumstances in which a corporate employee, "acting within the scope of his authority," allegedly conducts the corporation's affairs in a RICO-forbidden way. The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status.  And we can find nothing in the statute that requires more "separateness" than that.

*Id.*  Following *Cedric Kushner*, the Fifth Circuit recently held that an owner who conducted his corporation's affairs through a pattern of racketeering activity was distinct from the corporation for purposes of the RICO statute.  *Abraham*, 480 F.3d 357.

Here, Plaintiffs' Complaint alleges that the Individual Defendants conducted the Swift Defendant' affairs in a RICO-forbidden way by using the using the Swift Defendants to carry out the illegal immigrant hiring scheme. (Compl. ¶¶ 66-69.)[18]  These allegations are indistinguishable from *Trollinger*, a case holding the plaintiffs sufficiently pleaded a distinct RICO enterprise (i.e., the Tyson Enterprise) by alleging that the individual defendants conducted Tyson's affairs to conduct an illegal hiring scheme in violation of RICO.  *Trollinger*, 2007 U.S. Dist. LEXIS 38882, at *41-44 (citing *Cedric Kushner*, 533 U.S. at 163).  Here, Plaintiffs' Complaint alleges that the Individual Defendants conducted the Swift Defendants' affairs in a RICO-forbidden way sufficiently alleges a distinct "Swift Enterprise." (Compl. ¶¶ 66-69.)  Therefore, the Swift Defendants' Motion to Dismiss the Complaint because of Plaintiffs' alleged failure to plead a distinct enterprise should be denied.

### d.    Plaintiffs Are Not Using the Doctrine of *Respondeat Superior* to Circumvent RICO.

Misquoting Paragraph 51 of the Complaint, the Swift Defendants contend that Plaintiffs are attempting to use the doctrine of *respondeat superior* to circumvent RICO's requirement of a distinct RICO enterprise. (Mot. to Dismiss at 27-28.)  Plaintiffs are doing no such thing.  As discussed above, Plaintiffs have pleaded two distinct RICO enterprises—the "Wrongful Documentation Enterprise" and the "Swift Enterprise"—and have sued the Swift Defendants and

---

[18]The Swift Defendants quote Paragraph 72 of Plaintiffs' Complaint as if it were "smoking gun" evidence of the alleged "fatal" lack of distinctness. (Mot. to Dismiss at 23).  This argument is based on a fundamental misreading of the Complaint, which alleges two distinct enterprises:  (i) the "Wrongful Documentation Enterprise" and (ii) the "Swift Enterprise."  (Compl. ¶¶ 60-69.)  Plaintiffs allege that the "Wrongful Documentation Enterprise" is an association-in-fact enterprise consisting of Defendants and third-party documentation middlemen.  (*Id*. ¶¶ 60-65.)  With respect to the "Swift Enterprise," Plaintiffs allege that the Individual Defendants conducted the Swift Defendants' affairs in a RICO-forbidden way.  Paragraph 72 is simply a reference to the two enterprises alleged in the Complaint.  (*Id.* ¶ 72.)  In *Trollinger*, the court denied a motion to dismiss a complaint with essentially the same enterprises and a paragraph with language similar to the language used in Paragraph 72.  *Trollinger*, 2007 U.S. Dist. LEXIS 38882, at *32-44 (denying defendants' motion to dismiss second amended complaint); Second Am. Compl. ¶ 59 ( Docket No. 115) in *Trollinger*, No. 4:02-CV-00023) (alleging that "Tyson Foods, Inc., in addition to being the enterprise for the individual defendants detailed above, is also a RICO defendant").

the Individual Defendants (i.e., Swift management) for the RICO violations alleged in the Complaint.  (*See supra* § II.D.2.c.)  Paragraph 51 of the Complaint has nothing to do with Plaintiffs' enterprise allegations.  (Compl. ¶ 51.)  Instead, Paragraph 51 is nothing more than a reference to the fact that, under the principles of *respondeat superior*, the Swift Defendants may be liable for their employees' illegal and tortious conduct.

> ### e.     Plaintiffs' Complaint Sufficiently Alleges the Swift Defendants' Participation in the Affairs of the Enterprise.

The Swift Defendants erroneously contend that the Complaint fails to allege that the Swift Defendants conducted the affairs of the "Wrongful Documentation Enterprise."  (Mot. to Dismiss at 28.)  In *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993), the Supreme Court held that to "conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs, one must participate in the operation or management of the enterprise itself."  Contrary to the Swift Defendants' assertion, Plaintiffs' allegations regarding the "Wrongful Documentation Enterprise" expressly state that the Swift Defendants participated in the operation or management of the enterprise:

- "The Individual Defendants and the Swift Defendants entered into various agreements with persons to help get fake immigration documentation for individuals who the Defendants knew were illegal immigrants (hereinafter referred to as 'documentation middlemen')" (Compl. ¶ 60);

- "The Defendants reviewed the fake immigration documentation obtained by the documentation middlemen and, pursuant to the Blind Eye Policy, accepted such documentation when they knew that such workers were illegal immigrants.  The management of the Swift Facilities acquiesced and approved of this illegal hiring" (Compl. ¶ 62);

- "*The Swift Defendants participated in the affairs of each enterprise* through a pattern of racketeering activity, knowingly employing and harboring illegal immigrants, as set forth herein.  As a result, the Swift Defendants are each a RICO 'person,' pursuant to § 1961(3)" (Compl. ¶ 64); and

- "Plaintiffs were proximately damaged as a direct result of the pattern of racketeering activity perpetrated by each of these association-in-fact enterprises. . . ." (Compl. ¶ 65.)

The essence of the allegations is that the Swift Defendants participated in the "operation or management" of the "Wrongful Documentation Enterprise." *See Mohawk*, 465 F.3d at 1286 (holding that similar allegations regarding Mohawk's participation in alleged illegal hiring scheme satisfied operation-or-management test).[19]

Like their distinctness argument, the Swift Defendants' operation-or-control argument is based on summary judgment cases and *Baker*, a case that has been subsequently rejected by other courts in similar cases. (Mot. to Dismiss at 28 (citing *Reves*, 507 U.S. at 185 (summary judgment case); *Cash Today of Texas, Inc. v. Greenberg*, No. 4:01-CV-A, 2003 U.S. Dist. LEXIS 80, at *6 (N.D. Tex. Jan.6, 2006) (summary judgment case); *Baker*, 357 F.3d at 691-92).) *Reves* and *Greenberg* involved motions for summary judgment and were decided based on the summary judgment evidence. *Reves*, 507 U.S. at 185; *Greenberg*, 2003 U.S. Dist. LEXIS 80, at *6. Neither case dealt with the issue before this Court—the sufficiency of the operation-or-management allegations in Plaintiffs' Complaint. Moreover, although *Baker* involved a motion to dismiss, it

---

[19]The Swift Defendants' participation in the operation or management of the "Wrongful Documentation Enterprise" is evidenced by the criminal complaint against Lamb. (Criminal Compl., *United States v. Lamb*, No. 4:07-MJ-103 (S.D. Iowa July 6, 2007) (Docket No. 1), App. at 109-120.) Federal prosecutors charged Christopher Todd Lamb, the assistant human resources manager in the Swift Defendants' Marshalltown, Iowa plant, with violating 8 U.S.C. § 1324(a)(1)(A)(iii) by harboring an illegal immigrant with knowledge or knowing disregard that the immigrants entered the United States illegally. (*See id.*) The affidavit submitted in connection with the criminal complaint describes an undercover sting operation in which Lamb was caught knowingly helping an illegal immigrant get re-hired at the Swift plant using false identity documents. (*Id.*) If the Court believes that Plaintiffs are required to plead additional facts regarding the Swift Defendants' participation in the management or control of the "Wrongful Documentation Enterprise," Plaintiffs can amend their Complaint to incorporate the information in this criminal complaint.

has been rejected by other courts considering the issue.  *See Mohawk*, 465 F.3d at 1286 (rejecting

*Baker* Court's analysis of  operation-or-management issue).[20]

### 3.     Plaintiffs' Complaint Adequately Pleads Violations of § 1962(a), (b), and (d).

### a.     The Complaint Sufficiently Alleges a Violation of § 1962(a).

The Swift Defendants erroneously contend that the Complaint fails to state a claim under §

1962(a) because it does not allege that the Swift Defendants invested income derived from

racketeering activity in a RICO enterprise.  (Mot. to Dismiss at 29 (citing *In re Burzynski*, 989 F.2d

733, 744 (5th Cir. 1993) (in a section 1962(a) claim, the RICO person must have received income

from the pattern of racketeering activity and used that income to operate the enterprise)).)  The

Complaint states a § 1962(a) claim by alleging:  (i) that the Swift Defendants derived income (in

the form of lower payroll costs) from the illegally scheme to hire and harbor illegal immigrants (*ee,

e.g.*, Compl. ¶¶ 60, 69); (ii) that the Swift Defendants paid the documentation middlemen to supply

and provide false immigration documents for the illegal immigrants (*id.* ¶¶ 60, 61); and (iii) the

Swift Defendants' pattern of racketeering activity was the proximate cause of Plaintiffs' damages

(*id.* ¶¶ 65, 76).  Under Rule 8's liberal notice pleading standard, these allegation sufficiently allege

that the Swift Defendants' invested their racketeering income in a RICO enterprise by using the

money they saved by paying lower wages to illegal immigrants to pay the documentation

middlemen to find more illegal workers.  Fed. R. Civ. P. 8.[21]

---

[20]The *Baker* Court concluded that a similarly alleged RICO enterprise , consisting of a defendant and various recruiters, failed to satisfy *Reves* because the defendant (i.e., the RICO "person") was not alleged to have "infiltrated, taken over, manipulated, disrupted or suborned a distinct entity or even a distinct association in fact." *Baker*, 357 F.3d at 691.  This purported requirement is not found in and bears no relation to the text of § 1962, and the Supreme Court has never held that it is an element of the *Reves* operation-or-management test.  Further, the case that the *Baker* Court cites for this interpretation of *Reves*, *United States v. Neapolitan*, 791 F.2d 489, 500 (7th Cir. 1986), predates *Reves* by six years and does not support the proposition for which it is cited.  Not surprisingly, the *Mohawk* Court declined to follow *Baker*.  *Mohawk*, 465 F.3d at 1286.

[21]If the Court believes that § 1962(a) requires an additional sentence specifically alleging that the Swift Defendants used the savings from the illegal immigrant hiring scheme to pay the documentation middlemen, Plaintiffs can amend their Complaint to add that allegation.

**b.      The Complaint Sufficiently Alleges a Violation of § 1962(b).**

The Swift Defendants argue that the Complaint fails to state a claim under § 1962(b) because the Complaint does not allege that the (i) Swift Defendants acquired or maintained an interest in or control of a RICO enterprise and (ii) Plaintiffs' injuries resulted from the Swift Defendants' control of that RICO enterprise.  (Mot. to Dismiss at 31-32.)  This argument is based on a hyper-technical interpretation of the Complaint—the same type of hyper-technical interpretation that the Ninth Circuit rejected in *Mendoza*, 301 F.3d at 1168.  Read as a whole, the Complaint sufficiently alleges that the Swift Defendants acquired or maintained an interest in the "Wrongful Documentation Enterprise" and that Plaintiffs' injuries (i.e., lower wages) resulted from the Swift Defendants' acquisition or control of that enterprise:

- "By manipulating and controlling the labor market, the Defendants have acquired or maintained an interest in, or control of, an enterprise affecting interstate commerce through their pattern of racketeering activity in violation of 18 U.S.C. § 1962(b)" (Compl. ¶ 58);

- "The Individual Defendants and the Swift Defendants entered into various agreements with persons to help get fake immigration documentation for individuals who the Defendants knew were illegal immigrants (hereinafter referred to as 'documentation middlemen')" (Compl. ¶ 60);

- "The Defendants reviewed the fake immigration documentation obtained by the documentation middlemen and, pursuant to the Blind Eye Policy, accepted such documentation when they knew that such workers were illegal immigrants.  The management of the Swift Facilities acquiesced and approved of this illegal hiring" (Compl. ¶ 62);

- "The Swift Defendants participated in the affairs of each enterprise through a pattern of racketeering activity, knowingly employing and harboring illegal immigrants, as set forth herein.  As a result, the Swift Defendants are each a RICO 'person,' pursuant to § 1961(3)"  (Compl. ¶ 64); and

- "Plaintiffs were proximately damaged as a direct result of the pattern of racketeering activity perpetrated by each of these association-in-fact enterprises because this pattern of racketeering activity caused the wages paid at the Swift Facilities to be depressed below what they would have been in the labor market consisting only of legal workers."  (Compl. ¶ 65.)

Under the applicable notice pleading standard, these allegations sufficiently allege that the Swift Defendants acquired or maintained an interest in a RICO enterprise by paying the documentation middlemen to find illegal workers and, as a result, depressed the wages the Swift Defendants paid to their legal workers.  Fed. R. Civ. P. 8.[22]

### c.    The Complaint Sufficiently Alleges a Violation of § 1962(d).

The Swift Defendants contend that Plaintiffs § 1962(d) RICO conspiracy claim should be dismissed because Plaintiffs' Complaint allegedly fails to state a claim under § 1962(a), (b), or (c). For the reasons discussed above, the Complaint states a RICO claim under each of these sections—any one of which is sufficient to support Plaintiffs' RICO conspiracy claim.  *Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007) (plaintiffs' complaint stated a § 1962(d) RICO conspiracy claim by alleging that the defendants conspiring § 1962(c)).  Therefore, the Swift Defendants' motion to dismiss Plaintiffs' RICO conspiracy claim should be denied.[23]

### 4.    Plaintiffs Have Sufficiently Pleaded a Pattern of Racketeering Activity.

The Swift Defendants' argument that the Complaint fails to sufficiently plead a pattern of racketeering activity simply repeats their argument that the enterprise lacked continuity.  (Mot. to Dismiss at 33-34.)  For the reasons discussed above (*see supra* § II.D.2.b.), Plaintiffs' allegations of a long-term and continuing scheme to hire and harbor illegal immigrants are sufficiently plead closed and open-ended continuity—either of which is sufficient to satisfy RICO's continuity requirement. *See Trollinger*, 2007 U.S. Dist. LEXIS 38882, at 36-38 (concluding that the plaintiffs

---

[22]If the Court believes that § 1962(b) requires an additional sentence specifically alleging that the Swift Defendants acquired or maintained an interest in a RICO enterprise by paying the documentation middlemen to find illegal workers and, as a result, depressed the wages the Swift Defendants paid to their legal workers, Plaintiffs can amend their Complaint to add that allegation.

[23]The Swift Defendants also contend, without any supporting argument, that Plaintiffs' RICO conspiracy claim lacks the requisite factual support.  (Mot. to Dismiss at 33.)  Since the Swift Defendants failed to point to any specific deficiencies in Plaintiffs' RICO conspiracy claim, the Court should decline to search for any such defects.

satisfied the continuity requirement by alleging that Tyson had an ongoing relationship with temporary employment services with illegal workers); *Brewer*, 2007 U.S. Dist. LEXIS, at *31-34 (plaintiff's allegations of a four-year illegal hiring scheme sufficiently alleged closed and open-ended continuity).  Therefore, the Swift Defendants' motion to dismiss the Complaint based on Plaintiffs' alleged failure to plead a pattern of racketeering activity should be denied.

**E.     The Court Should Exercise Supplemental Jurisdiction Over Plaintiffs' State-Law Claims.**

The Swift Defendant contend that the Court should decline to exercise jurisdiction over Plaintiffs' state-law claims if the Court dismisses Plaintiffs' federal law claims.  (Mot. to Dismiss at 34.)  For the reasons discussed above, Plaintiffs' RICO claims against the Swift Defendants should not be dismissed.  Therefore, the Court should retain supplemental jurisdiction over the state-law claims.

**F.     If the Court Determines that a More Definite Statement Is Required, Plaintiffs Are Willing To File an Amended Complaint.**

In the alternative, the Swift Defendants ask the Court to require Plaintiffs to submit a more definite statement of their claims.  (Mot. to Dismiss at 35.)  If the Court determines that a more definite statement is required or is deficient in any other respect, Plaintiffs are willing to file an amended complaint with additional factual details.

### III.  <u>CONCLUSION</u>

For the foregoing reasons, the Motion to Dismiss should be denied in its entirety.

Alternatively, if the Court believes that the Complaint is deficient in any respect, the Court should

give Plaintiffs leave to replead.

**Respectfully Submitted,**


  /s/ Michael E. Heygood
Michael E. Heygood
State Bar No. 00784267
Charles W. Miller
State Bar No. 24007677
Claudia Cano
State Bar No. 00793458
Angel Reyes, III
State Bar No. 00784835
**HEYGOOD, ORR, REYES & BARTOLOMEI**
2331 W. Northwest Highway, 2nd Floor
Dallas, Texas 75220
214/526-7900
214/526-7910 (Fax)


Domingo A. Garcia
State Bar No. 07631950
Paul R. Hornung
State Bar No. 00795831
**LAW OFFICE OF DOMINGO GARCIA, P.C.**
1107 W. Jefferson Blvd.
Dallas, Texas 75208-5145
(214) 941-8300
(214) 943-7536 (Fax)


**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2007, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case files system of the court. The electronic case files system sent a "Notice of Electronic Filing" to the following individuals who have consented in writing to accept this Notice as service of this document by electronic means:

Carol C. Payne
Karen L. Hirschman
VINSON & ELKINS, LLP
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201

T. Ray Guy
Robert M. Castle, III
WEIL GOTSHAL & MANGES, LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201

    /s/ Michael E. Heygood
    Michael E. Heygood