IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BLANCA VALENZUELA, *et al.*,          §
                                     §
        Plaintiffs,                  §
                                     §
v.                                   §          Civil Action No. 3:06-CV-2322-N
                                     §
SWIFT BEEF COMPANY, INC., *et al.*,  §
                                     §
        Defendants.                  §

## ORDER

This Order addresses Defendants Swift Beef Company, Inc. and Swift & Company's (collectively, "Swift") motion to dismiss [20].  For the reasons described below, the Court grants in part and denies in part Swift's motion.

### I. THE ILLEGAL HIRING SCHEME

This is a putative class action brought on behalf of all persons legally authorized to be employed in the United States who have been employed at Swift's processing plants as hourly wage earners.  The plaintiffs allege that their wages were depressed because Swift illegally recruited and hired illegal aliens; they allege that Swift's access to cheap and illegal labor provided Swift with the ability to bargain for lower wages in the collective bargaining process.  They have filed suit against Swift as a corporate entity and against five John Does – unidentified members of Swift's management (collectively, "Management"). [1]

_____

[1]It is not entirely clear if the John Does are exclusively Swift management or if the "documentation middlemen," described below, are also John Does.  Plaintiffs' briefing suggests that the John Does are all Swift managers, so the Court proceeds under the

ORDER – PAGE 1

More specifically, Plaintiffs allege that Management has run an illegal hiring scheme whereby it has:

1.  Paid individuals to provide false documentation for illegal alien employees and otherwise assisted in obtaining false employment documentation for illegal alien employees.

2. Ignored obvious facts that indicate that documents do not relate to the people tendering them ("Blind Eye Policy").

According to Plaintiffs, Management has, by engaging in these activities, committed RICO predicate offenses of *harboring* illegal aliens under 8 U.S.C. § 1324(a)(1)(a)(iii) and *hiring* illegal aliens under 8 U.S.C. § 1324(a)(3).  Plaintiffs further allege two distinct RICO enterprises.  The activities of the "Swift Enterprise" are perpetrated solely by Management in its adoption of the Blind Eye Policy and in its aiding employees to obtain false documentation.  The activities of the "Wrongful Documentation Enterprise" are perpetrated by Management in tandem with unknown persons whom Plaintiffs have dubbed the "documentation middlemen."   Management allegedly collaborated with documentation middlemen to provide prospective employees with false documentation.

Swift now moves to dismiss for lack of jurisdiction, for failure to join necessary and indispensable parties, for lack of standing, and for failure to state a claim.

## II.  THE COURT HAS JURISDICTION DESPITE THE NLRB

The National Labor Relations Board ("NLRB") does not have primary jurisdiction over Plaintiffs' RICO claims.  Swift argues that Plaintiffs' claims can ultimately be reduced

_____

assumption that they are.

to a claim that Swift failed to "bargain in good faith" when it entered the collective bargaining agreement that set the wages at a depressed level.  Because the duty to bargain in good faith is regulated by the NLRB, Swift argues, the NLRB, and not the Court, should review the Plaintiffs' claim.  Of the numerous courts considering analogous cases, the Court is aware of none that has abstained on the grounds of NLRB's primary jurisdiction. Furthermore, the two courts that have explicitly considered the argument have rejected it. *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 609-11 (6th Cir. 2004); *Baker v. IBP, Inc.*, 357 F.3d 685, 688-90 (7th Cir. 2004).  As the Seventh Circuit explained, "[e]mployers and unions bargain in the shadow of supply and demand; they do not bargain about what supply and demand will be." *Baker*, 357 F.3d at 690.  The Plaintiffs have alleged that Swift illegally increased the supply of labor and bargained in the shadow of that increased supply – not that Swift failed to bargain.  "In the absence of a request to bargain and a refusal to do so, no one could file a charge with the NLRB; in the absence of a (potential) charge the Board lacks primary jurisdiction over the suit." *Id*. at 689.

Nor does Swift's argument that calculation of damages must "refer" to the collective bargaining process transform Plaintiffs' claim into a matter within the NLRB's primary jurisdiction.  While the NLRB has primary jurisdiction over the collective bargaining process, it does not have primary jurisdiction over "referring to" or "analysis of" the

ORDER – PAGE 3

collective bargaining process.[2]  Accordingly the Court may exercise jurisdiction and consider Plaintiffs' claims.

### III.  THE LABOR UNIONS ARE NOT NECESSARY PARTIES

The labor unions that represented Plaintiffs in the collective bargaining process are not necessary parties.  Rule 19 requires a court to join an absent party if feasible where:

> the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the persons ability to protect the interest or (ii) leave any of the persons already parties subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

FED. R. CIV. P 19(a).  Although it is close, the unions' interests are not implicated enough to render them necessary parties.  Swift claims the case's outcome could affect the the unions' future bargaining positions, the employees' perception of the unions, and the unions' contracts with Swift.  With respect to the first two alleged union interests, Swift cites no authority for its suggestion that such vague and speculative interests are of the type Rule 19 is meant to protect.  With respect to the third alleged interest, it is difficult to see why the unions would object to the Plaintiffs' acquisition of back pay and – if the collective bargaining agreement is still in place – payments for future losses.  The Court can also not

---

[2]It is not even clear to the Court that extensive analysis of the collective bargaining process would be necessary.  Thus, even if Plaintiffs claims did involve issues within the primary jurisdiction of the NLRB, the Court would likely still be able to consider the Plaintiffs' claims under the collateral exception to NLRB primary jurisdiction.  *See Connell Const. Co., Inc., v. Plumbers & Steamfitters Local Union No. 100*, 421 U.S. 616, 626 (holding that "federal courts may decide labor law questions that emerge as collateral issues in suits brought under independent federal remedies").

discern the foundation for Swift's claim that it would face a substantial risk of inconsistent obligations. Without further description as to how a judgment rendered in this case "in the local unions' absence would prejudice Swift by exposing it to a court mandate that would conflict with its contractual obligations under the numerous collective bargaining agreements," *see* Swift's Motion to Dismiss at 10, the Court cannot find that the unions are necessary parties. *See Scott v. City of New York*, 340 F. Supp. 2d. 371, 383 (S.D.N.Y. 2004) (finding that labor unions were not necessary because employees sought only monetary damages against employer, the unions claimed no legal interest, and the risk of inconsistent obligations was relatively insignificant).

### IV. THE UNIONS ARE NOT EXCLUSIVE PARTIES UNDER 29 U.S.C. § 159(A).

Although the Seventh Circuit, citing 29 U.S.C. § 159(a), held that unions, and not employees, are the proper representatives for claims such as the Plaintiffs', *Baker*, 357 F.3d at 690-91, the Court is more persuaded by the more recent and contrary analysis offered by the Sixth Circuit. *Trollinger*, 370 F.3d at 620-22. Section 159(a) provides in pertinent part:

> Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit *for the purposes of collective bargaining* in respect to rates of pay, wages, hours of employment, or other conditions of employment . . .

29 U.S.C. § 159(a) (emphasis added). Because Plaintiffs' claim concerns wages, Swift argues that the unions are the only proper parties. That argument gives unwarranted scope to section 159(a). As the *Trollinger* court explained, "[o]nly when a collective bargaining agreement includes an exclusive contractual remedy must an employee involve the union in

a lawsuit." 370 F.3d at 621 (citing *Vaca v. Sipes*, 386 U.S. 171 (1967)). In *Trollinger*, as

here, the case involved allegations of RICO violations – not an alleged breach of a collective

bargaining agreement with an exclusive contractual remedy. *Id*. Accordingly, the unions are

not the only appropriate parties.[3]

## V. RULE 12(B)(6) STANDARD

When faced with a Rule 12(b)(6) motion to dismiss, the Court must determine whether

the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*,

42 F.3d 925, 931 (5th Cir. 1995). According to the Supreme Court, a viable complaint must

include "enough facts to state a claim to relief that is plausible on its face," i.e., "enough

fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or

element]." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1965, 1974

(2007).[4] A plaintiff is required, however, to provide "more than labels and conclusions, and

a formulaic recitation of a cause of action will not do." *Id*. at 1965. "Factual allegations

must be enough to raise a right to relief above the speculative level on the assumption that

all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citations omitted).

---

[3]Swift argues that the *Trollinger* court's analysis was incorrect because it did not distinguish between individual actions and class actions, but it is not at all clear why the distinction should be regarded as important. Furthermore, to the extent that any members of the putative class are no longer employed by Swift, Swift's argument suggests that those former employees must be represented by a union of which they are no longer members. Such a result is at least odd and counts against Swift's argument.

[4]"Although the context of this discussion in *Bell Atlantic* was the Sherman Act, nothing in the reasoning of the decision would appear to limit its scope to Sherman Act Claims." *Halaris v. Viacom Inc.*, No. 3:06-CV-1646-N, at 9 (N.D. Tex. Sept. 21, 2007).

In ruling on a Rule 12(b)(6) motion, the court must limit its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff.  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

## VI. PLAINTIFFS HAVE PLED ONLY PREDICATE HARBORING OFFENSES

Plaintiffs allege that Management's illegal hiring scheme constituted a pattern of racketeering activity that is actionable under RICO.  Specifically, Plaintiffs claim that the alleged activity violates 8 U.S.C. § 1324 (a)(3) and 1324(a)(1)(A)(iii), hiring and harboring offenses, respectively.  Although the Court does not find that Plaintiffs have adequately pled hiring offenses, it finds that they have pled harboring offenses.[5]

### A. *Plaintiffs Have Not Pled Hiring Offenses*

For Plaintiffs to have pled a violation of 8 U.S.C. § 1324(a)(3), Plaintiffs' must have pled that Management actually knew the illegal aliens it hired were smuggled into the United States.  The section provides:

> (A) Any person who, during any 12-month period, knowingly hires for employment at least 10 individuals with actual knowledge that the individuals are aliens described in subparagraph (B) shall be fined under Title 18 or imprisoned for not more than 5 years, or both.
> (B) An alien described in this subparagraph is an alien who--
> (i) is an unauthorized alien . . .and
> (ii) *has been brought into the United States* in violation of this subsection.

8 U.S.C. § 1324(a)(3) (emphasis added).  In contrast, 8 U.S.C. § 1324a(a)(1)(A) provides:

---

[5]Insofar as Swift argues that the allegations of predicate offenses are insufficiently specific, the Court rejects the argument.  The Plaintiffs' allegations are enough to make it plausible that Management has illegally harbored aliens over an extended period of time.

> It is unlawful for a person or other entity to hire, or to recruit or refer for a fee, for employment in the United States an alien knowing the alien is an unauthorized alien . . . with respect to such employment . . .

8 U.S.C. § 1324a(a)(1)(A). While Section 1324(a)(3) is a predicate offense for the purposes of RICO, Section 1324a(a)(1)(A) is not. *See* 18 U.S.C. § 1961(1)(F). Relying in part on this contrast, numerous courts have pointed out that a plaintiff states a predicate hiring offense only if he alleges that a defendant had actual knowledge that it employed an illegal alien who was brought into the United States in violation of the statute. *See, e.g., Commercial Cleaning Services, L.L.C. v. Collin Service Sys., Inc.*, 271 F.3d 374, 387 (2d Cir. 2001); *Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295, 309 (D.N.J. 2005); *Sys. Mgmt., Inc., v. Loiselle*, 91 F. Supp. 2d 401, 408 (D. Mass. 2000).

Although courts agree that a plaintiff is required to plead actual knowledge of smuggling[6] in order to plead a predicate offense under 8 U.S.C. § 1324(a)(3), courts disagree as to what level of detail satisfies that requirement. For example, courts in the Ninth Circuit have applied a very liberal pleading standard to allow complaints to stand. *See, e.g., Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1168 (9th Cir. 2002) (finding adequate the allegations "that the defendants had knowledge of illegal harboring 'and/or' smuggling"). In contrast, other courts have dismissed complaints because plaintiffs failed "to allege that the defendant had knowledge of how the aliens had been brought into the United States and

---

[6]Whether "smuggling" is the correct word is a matter for debate. It is possible that section 1324(a)(3) would be violated even if a defendant only had knowledge of activities that may not quite qualify as "smuggling." *See Trollinger v. Tyson Foods, Inc.*, 2007 WL 1574275, at *6 n.10. Because the Plaintiffs have failed to allege Management had actual knowledge of any violations of section 1324(a), the Court need not address the issue.

ORDER – PAGE 8

that they were brought into the United States in violation of this employment provision." *Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295, 309 (D.N.J. 2005); *Sys. Mgmt., Inc., v. Loiselle*, 91 F. Supp. 2d 401, 408 (D. Mass. 2000).[7]

In the light of *Twombly*, 127 S. Ct. 1955,  the Court finds that the Plaintiffs have not pled that Management knew the illegal aliens it hired were smuggled into the country. Plaintiffs' conclusory allegation in paragraph 47 of its First Amended Complaint that "[t]he Defendants have aided and abetted in harboring, concealing, transporting, and smuggling Illegal Immigrants in violation of section 274 of the Immigration and Nationality Act [section 1324]" is not "enough to raise a right to relief above the speculative level."  *Id.* at 1965 (a plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of a cause of action will not do.").  The Court can find no other allegation in the complaint that could even arguably satisfy Plaintiffs' pleading requirements.  In fact, the complaint, taken as a whole, strongly suggests that Plaintiffs' regarded the mere act of knowingly hiring an illegal immigrant as a predicate offense, and their factual allegations track that

---

[7]Another court allowed a complaint to stand because the plaintiffs' allegation that the defendant knowingly hired thousands of illegal immigrants, coupled with the "widely known" fact that a substantial portion of illegal immigrants are smuggled into the country, amounts to an allegation that the plaintiff knew some number of the illegal immigrants it hired were smuggled into the country.  *See Trollinger v. Tyson Foods, Inc.*, 2007 WL 1574275, at *7.  One major problem with this approach is that the type of knowledge it describes is not "actual knowledge."  The Court also doubts whether this type of constructive knowledge would be sufficient to permit calculation of damages.  Calculating damages would require determining the depression in wages caused by the harboring violations, i.e., determining the depression in wages caused by a defendant's hiring illegal aliens whom it *also knew to be smuggled*.  Of course, to determine the depression in wages caused by harboring violations, first requires determining how many hired illegal aliens the defendant knew were smuggled.  "Some number" is an inadequate answer.

misunderstanding.  Accordingly, the Court holds that Plaintiffs have not adequately pled predicate hiring offenses.

### B. Plaintiffs Have Pled Harboring Offenses

By alleging that Management both employed illegal aliens and provided them with or assisted them in obtaining false employment documentation, Plaintiffs have pled predicate harboring offenses under 8 U.S.C. § 1324(a)(1)(A)(iii).  That section provides that an offense is committed by any person who:

> knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation

8 U.S.C. § 1324(a)(1)(A)(iii).[8]  In support of its argument that Plaintiffs have not pled harboring, Swift cites *Brewer v. Slayer*, 2007 U.S. Dist. LEXIS 36156 (E.D.Cal. May 17, 2007).  In that case, the court held that "*employment* is distinct from *harboring* and allegations in a complaint that a defendant employs undocumented aliens are insufficient to also allege harboring of undocumented aliens under 8 U.S.C. § 1324(a)(1)(A)(iii)."  Id. at *27 (emphasis in original).  While allegations of employment alone may not be enough, the Fifth Circuit has indicated that allegations of employment, coupled with allegations that a defendant provided false identification, is sufficient to plead a harboring offense.  *See United States  v. Shum*, No. 06-11002, slip op. at 3 (5th Cir. Aug. 10, 2007).  The Court upheld

---

[8]In order for the offense to be a RICO predicate offense, it must also be done for financial gain. 18 U.S.C. § 1961(F).  It is undisputed that financial gain was the motive in this case.

ORDER – PAGE 10

Shum's conviction because there was "ample evidence" that the defendant "provided aliens with employment in the United States and took steps that would shield their identities from detection by the government." *Id.*  In support of its decision, the Fifth Circuit cited *United States v. Kim*, 193 F.3d 567 (2d Cir. 1999).  That case held that harboring "encompasses conduct tending substantially to facilitate an alien's remaining in the United States illegally and to prevent government authorities from detecting his unlawful presence." *Id.*  Accordingly, the Court finds that Plaintiffs have pled harboring offenses by alleging both employment and provision of false documentation.[9]

### VII.  PLAINTIFFS' ALLEGATIONS SATISFY RICO'S PROXIMATE CAUSE STANDARD

Plaintiffs' allegation that Management's employment of harbored illegal workers depressed their wages satisfies RICO's proximate cause standard.  The Court agrees with the Eleventh Circuit's extensive analysis in *Williams v. Mohawk Industries, Inc.*. 465 F.3d 1277, 1287-91 (11th Cir. 2006).  The *Mohawk* court held that allegations of illegal hiring and harboring are sufficient to meet the proximate cause standard set by the Supreme Court in *Anza v. Ideal Steel Supply Corp.*, ___ U.S. ___, 126 S.Ct. 1991 (2006).  As the court explained, the defendant's "scheme of knowingly hiring and harboring illegal workers has the purpose and direct result of depressing the wages paid to the plaintiffs." *Mohawk*, 465 F.3d at 1289.  The court further explained that none of the concerns that led the Supreme

---

[9]Plaintiffs' success thus ultimately depends on their ability to show that Management employed illegal aliens whom it also helped to acquire false documentation *and* that Management's employment of those particular aliens depressed their wages.  In other words, Plaintiffs cannot recover for any depression in their wages caused by the employment of aliens whom Management did not also help to acquire false documentation.

Court to find no proximate cause in *Anza* was present: "there is no more direct injured party who could bring suit . . . . *Anza*'s concern about blurring the line between RICO and antitrust laws is wholly missing . . . . *Anza*'s concern about speculative, 'intricate, uncertain inquiries,' and unwieldy apportionment are not implicated in this case because . . . plaintiffs are [defendant's] own employees who seek to recover the diminution in wages they received directly from [the defendant]." *Id.* at 1290

Swift fails to distinguish this case from *Mohawk*. Swift points out that the plaintiffs in *Mohawk* alleged that the defendant employed thousands of illegal workers in a particular narrow labor market dominated by the defendant. In contrast, Plaintiffs here make no such allegations. Swift's argument seems to be that, absent such conditions, it would be difficult to determine what effect the illegal hiring scheme had on Plaintiffs' wages. Relying on *Anza*'s declaration that "the less direct an injury is, the more difficult it becomes to ascertain the amount of plaintiffs' damages attributable to the violation, as distinct from other independent factors," 126 S.Ct. at 1997, Swift argues that Plaintiffs' have not pled a direct injury – a requisite to satisfying RICO's proximate cause standard. The Court disagrees. Although an indirect injury entails difficult damage proof issues, the presence of difficult damage issues does not make an injury indirect. The ultimate question is whether the alleged injury is actually direct. Despite the fact that identification of damages may be more difficult in this case, *Mohawk*'s answer to that question stands unaffected. Unlike in *Anza*, where a plaintiff company alleged it was damaged by its competitor's illegal failure to pay taxes and the competitor's resultant ability to offer lower prices, the Plaintiffs have here alleged that

Management's "employment and harboring of illegal workers has the purpose and direct result of depressing the wages paid to the plaintiffs." *Mohawk*, 465 F.3d at 1289. Accordingly, the Court finds that Plaintiffs have pled proximate cause.[10]

## VIII. SWIFT IS NOT A MEMBER OF THE "SWIFT ENTERPRISE"

Although the existence of a Swift enterprise is not seriously disputed[11], Swift is correct in its argument that it is not a member of the "Swift Enterprise." Management, as individuals, may be liable for conducting the affairs of Swift through a pattern of illegal harboring. *See Schofield v. First Commodity Corp.*, 793 F.2d 28, 30 (1st Cir. 1986). But Swift, as the enterprise, may not be also be liable as person in that enterprise; the "RICO person" sued under 18 U.S.C. § 1962(c) must be distinct from the "RICO enterprise." *See Bishop v. Corbitt Marine Ways, Inc.*, 802 F.2d 122 (5th Cir. 1986). Accordingly, Swift is not a person that can be liable for the acts committed by members of the Swift Enterprise.[12]

---

[10]Swift's objections appear oriented to whether Plaintiffs have suffered an injury rather than whether the alleged injury is direct. *Anza* deals only with the latter issue.

[11]Swift seems to argue that Plaintiffs have not alleged a "Swift Enterprise" because they have not pled a pattern of racketeering activity. Properly understood, this is not an argument that an enterprise did not exist – it is indisputable that Swift Beef Company, Inc. is an enterprise – but an argument that Plaintiffs have not adequately alleged that Management conducted the affairs of the enterprise through a pattern of racketeering activity – an argument the Court considers and rejects *infra,* pp. 16-17.

[12]Also, by citing the general rule that a corporation is capable of acting only through its agents, Plaintiffs cannot avoid the specific and widely accepted rule that a RICO enterprise cannot be liable under RICO for acts committed solely by the enterprise's members.

It is not clear if Plaintiffs regard the Swift Enterprise to consist of the different components of Swift (i.e., Swift & Company and Swift Beef Inc.). Plaintiffs might do so in hopes that a component, because it was not the enterprise, could be a liable RICO person. Nonetheless, Plaintiffs have wholly failed to allege such an enterprise. Therefore, the Court dismisses the claims against Swift for violations committed by the Swift Enterprise.

## IX. PLAINTIFFS HAVE PLED THE EXISTENCE OF A "WRONGFUL DOCUMENTATION ENTERPRISE" AND THAT SWIFT IS A MEMBER

Perhaps aware that Swift cannot simultaneously be the Swift Enterprise and a person liable for the acts of the Swift Enterprise, Plaintiffs allege the existence of a "Wrongful Documentation Enterprise" that consisted of an association in fact between Swift and documentation middlemen. If such an enterprise did exist, Swift could be held liable if it conducted that enterprise's affairs through a pattern of illegal harboring (because Swift would not simultaneously be a sued "RICO person" and the "RICO enterprise"). Swift claims that Plaintiffs allegations of a "Wrongful Documentation Enterprise" are insufficient to state a claim against Swift. In making that claim, Swift makes two arguments: (1) that the alleged enterprise did not satisfy the Fifth Circuit's requirements, and (2) that the documentation middlemen are agents or employees of Swift, so Swift is actually and impermissibly both the RICO enterprise and a RICO person. Both arguments fail.

### A. *Plaintiffs Have Pled the Existence of a Wrongful Documentation Enterprise*

The existence of an enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."

ORDER – PAGE 14

*United States v. Turkette*, 452 U.S. 576, 583 (1981). The definitive factor in determining the existence of a RICO enterprise is the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes. *United States v. Elliot*, 571 F.2d 880 (5th Cir. 1978). In other words, the enterprise "(1) must have an existence separate and apart from the pattern of racketeering, (2) must be an ongoing organization and (3) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure." *Delta Truck & Tractor, Inc., v. J.I. Case Co.*, 855 F.2d 241, 243 (5th Cir. 1988). Swift argues that the Plaintiffs' alleged "enterprise" fails to meet all three requirements.

Plaintiffs have alleged that the enterprise has an existence separate and apart from the pattern of racketeering. The meaning of this requirement has been the subject of disagreement among courts. Some, such as the Eight Circuit, have held that an enterprise must have "an ascertainable structure distinct from that inherent in the conduct of a pattern of racketeering activity." *United States v. Bledsoe*, 674 F.2d 647. Others, following the Fifth Circuit's decision in *United States v. Elliot*, 571 F.2d 880 (5th Cir. 1978), rejected *Bledsoe* and found that individuals associating together solely for the purpose of committing predicate acts may constitute an enterprise. *United States v. Cagina*, 697 F.2d 915, 917-19 (11th Cir. 1983). For these latter courts, an enterprise, as distinguished from a pattern of racketeering activity, may be proven by an ongoing organization functioning as a continuing unit. *See id.* Similarly, the Fifth Circuit has not adopted the *Bledsoe* standard and requires only that an enterprise be a "continuing unit with a consensual decision making structure." *United States*

ORDER – PAGE 15

*v. Thompson*, 253 F.3d 700, 2001 WL 498430, *7 (5th Cir. 2001); *see also Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 427 (5th Cir. 1987) ("[E]nterprises must have an ongoing organization or be a continuing unit, such that the enterprise has an existence that can be defined apart from the commission of the predicate acts."). Because the Court finds that the Plaintiffs have alleged facts sufficient to plead that the Wrongful Documentation Enterprise was an ongoing organization and that its members functioned as a continuing unit, *infra* at 16-17, the Court finds that Plaintiffs have alleged an enterprise separate and distinct from the pattern of racketeering activity.

Plaintiffs have alleged that the enterprise was an ongoing organization. Swift claims otherwise and simply states that "there are no facts in the Complaint suggesting any of the enterprises are ongoing organizations." *See* Swift's Motion to Dismiss at 22. But Plaintiffs have alleged a long-term practice of assisting its illegal alien employees with the procurement of false documentation. Taken as a whole, Plaintiffs plausibly allege that Management and the documentation middlemen engaged in continued criminal activity that would establish a closed period of continuity. *See H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 242 (1989) ("A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time."). Furthermore, the allegations are sufficient to make plausible a threat of continuity. *See id.* (holding that open-ended continuity is satisfied if a threat of continuity is established). Accordingly, the Court finds that Plaintiffs have alleged that the

ORDER – PAGE 16

Wrongful Documentation Enterprise was an ongoing organization that continuously engaged in criminal activity and posed a threat of continuing to engage in criminal activity.[13]

Plaintiffs have also sufficiently alleged that Management and the documentation middlemen had a consensual decision making structure. Once again, Swift's only objection is that "there are no allegations of any hierarchical or consensual decision making structure." But Plaintiffs have alleged that Management collaborated with the documentation middlemen to provide its illegal employees with false documentation. Although it is not currently clear what the structure of those collaborations were, it is difficult to imagine the alleged collaborations taking place in the absence of a consensual or hierarchical decision making structure. Accordingly, the Court finds that Plaintiffs have adequately alleged the existence of a "Wrongful Documentation Enterprise."[14]

### B. *Swift Is a Member of the Alleged Wrongful Documentation Enterprise*

Swift argues that the documentation middlemen are employees or agents of Swift and, therefore, that the Wrongful Documentation Enterprise is simply the Swift Enterprise under

---

[13]The Court is also reluctant to disagree with the courts that have found allegations similar to the Plaintiffs' to be sufficient. *See, e.g. Trollinger*, 2007 U.S. Dist. LEXIS 38882, at *36-38; *Brewer*, 2007 U.S. Dist. LEXIS 36156, at *31-34.

[14]Again, the Court is reluctant to disagree with courts that have found allegations similar to the Plaintiffs' to be sufficient. *See, e.g., Mohawk*, 465 F.3d at 1283-84; *Trollinger*, 2007 U.S. Dist. LEXIS 38882, at *36-38. Also, Swift half-heartedly makes the argument that Plaintiffs have not alleged that Swift participated in operating the affairs of the Wrongful Documentation Enterprise, as required by 18 U.S.C. § 1962(c). Plaintiffs' complaint, read as a whole, certainly implies that Swift was the major player in the enterprise. In fact, Swift's argument here conflicts with its other argument, discussed *infra* Section IX(B), that Swift is the entire enterprise.

ORDER – PAGE 17

a different label.  Thus, according to Swift, it cannot be liable as a member of the Wrongful

Documentation Enterprise for the same reasons that it cannot be liable as a member of the

Swift Enterprise: it cannot simultaneously be both a sued RICO person and a RICO

enterprise.  In support of its argument, Swift cites a line of cases holding that employees,

agents, or affiliated entities acting on behalf of a corporation do not create an enterprise

distinct from the corporation.  *See, e.g.,  Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 227

(7th Cir. 1997); *Brittingham v. Mobil Corp.*, 943 F.2d 297, 299 (3d Cir. 1991).  Here,

Plaintiffs have alleged that the documentation middlemen "maintained their own business

operations and were not agents of [Swift] and were paid a fee for their work performed." *See*

Plaintiff's First Amended Complaint ¶ 62.  At this early stage, the Court cannot say that the

documentation middlemen provided false documentation as mere agents/employees of Swift

– especially in light of the fact that the vast majority of other courts have found allegations

similar to Plaintiffs' to allege an enterprise of which the defendant corporation is a member.

*Mohawk*, 465 F.3d at 1285-86; *Mendoza*, 301 F.3d at 1171-75; *Trollinger*, 2007 U.S. Dist.

LEXIS 38882, at *32-44; *but see Baker*, 357 F.3d at 691-92.  Accordingly, the Court finds

that Plaintiffs have adequately alleged the existence of a Wrongful Documentation Enterprise

that is distinct from Swift.

## X. Plaintiffs Have Not Stated a Claim Under Section 1962 (a) or (b)

Plaintiffs, in addition to advancing claims under 18 U.S.C. § 1962(c), bring claims

under (a), (b), and (d) of that section.  Section 1962(c), the most sensible foundation for

Plaintiffs claims, prohibits a person employed or associated with an enterprise to conduct or

participate in the enterprise's affairs through a pattern of racketeering activity.  Plaintiffs have, for the reasons described above, stated a claim under this section.  Plaintiffs have also stated a claim under section 1962(d), but they ask for too much in also bringing claims under (a) and (b).

### A.  *Plaintiffs Have Not Stated a Claim Under Section 1962(a)*

Plaintiffs have not stated a claim under Section 1962(a), which prohibits any person who has received income from a pattern of racketeering activity from investing that income in a RICO enterprise.  18 U.S.C. § 1962(a).  Plaintiffs have made no allegations that any person specifically invested illegal income into the illegal hiring scheme or that they suffered any injury as a direct result of the investment.  *See Abraham v. Singh*, 480 F.3d 351, 356-57 (5th Cir. 2007) (dismissing a claim under section 1962(a) because plaintiffs failed to allege that their injuries resulted from the use or investment of illegal income).  Therefore, the Court dismisses Plaintiffs' section 1962(a) claim.

### B.  *Plaintiffs Have Not Stated a Claim Under Section 1962(b)*

Plaintiffs have not stated a claim under Section 1962(b), which prohibits any person from gaining an interest in, or control of, an enterprise through a pattern of racketeering activity.  Beyond parroting the language of section 1962(b), Plaintiffs make no factual allegations that anyone gained control of an enterprise *through* a pattern of racketeering.  *See Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 329-31 (6th Cir. 1999) (dismissing a claim because plaintiffs, beyond parroting the language of section 1962(b), did not allege that defendants gained control *through* a pattern of racketeering

activity).  Furthermore,  there is no indication that Plaintiffs suffered an injury due to anyone gaining control of an enterprise.  *See Abraham*, 480 F.3d 356-57.  Therefore, the Court dismisses the Plaintiffs' section 1962(b) claim.

### C.  Plaintiffs Have Stated a Claim Under Section 1962(d)

Plaintiffs have stated a claim under section 1962(d), which prohibits conspiring to violate any of the other sections.  A violation of 1962(d) occurs where "two or more people agreed to commit a substantive RICO offense and . . . the defendant knew of and agreed to the overall objective of the RICO offense."  *United States v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir. 1998).  Because Plaintiffs have alleged that Defendants *themselves* agreed to commit predicate acts of racketeering in violation of 1962(c), Plaintiffs have stated a claim under 1962(d).  *See Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007) (finding allegations "that the Defendants entered into an agreement and that each agreed to commit at least two predicate acts of racketeering" sufficient to state claim under 1962(d) where the Court had already found allegations sufficient to state a claim under 1962(c)).

### CONCLUSION

Plaintiffs have stated claims under 18 U.S.C. § 1962(c) against Management as a member of the Swift Enterprise and against Swift as a member of the Wrongful Documentation Enterprise.  Defendants are potentially liable only for the depression in wages caused by Management's harboring of illegal aliens, i.e., Management's knowing employment of illegal aliens that it also assisted in obtaining false documentation.  The Court also finds that the unions are not necessary parties.  Accordingly, the Court grants in part and

denies in part Swift's motion to dismiss.[15]  The Court further denies Swift's motion for a

more definite statement.

Signed December 20, 2007.

David C. Godbey
United States District Judge

---

[15] Except for Plaintiffs' allegations of mail and wire fraud, Plaintiffs do not allege fraud as a predicate act.  Swift's objections that the complaint fails to meet Rule 9(b)'s heightened pleading requirement are thus largely misplaced, but the Court does dismiss, with the apparent consent of Plaintiffs, *see* Plaintiffs' Response at 11 n.5, the allegations of mail and wire fraud for failure to meet the requirement.  There is also no indication from Plaintiffs that they suffered damages from mail or wire fraud.