AO88 (Rev. 12/07) Subpoena in a Civil Case

# Issued by the
# UNITED STATES DISTRICT COURT

Northern District of Texas

Blanca Valenzuela, et. al.

V.

Swift Beef Co., Inc. et. al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  3-06cv2322-N

TO:  Mark Reed, Border Management Strategies, 5215 N. Sabino Canyon Drive, Tucson, Arizona 85750.

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION    Loews Ventana Canyon Resort, 7000 N. Resort Drive, Tucson, Arizona 85750 | DATE AND TIME    7/2/2008 9:00 am |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Exhibit A attached hereto

| PLACE    Border Management Strategies, 5215 N. Sabino Canyon Drive, Tucson, Arizona 85750. | DATE AND TIME    6/27/2008 8:36 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE    6/13/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Eric D. Pearson; Heygood, Orr, Reyes, Pearson & Bartolomei, 2331 W. Northwest Hwy, Second floor, Dallas, Texas 75220; 214-526-7900

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

APP    30

AO88 (Rev. 12/07) Subpoena in a Civil Case (Page 2)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.
(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
(2) Command to Produce Materials or Permit Inspection.
(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
(3) Quashing or Modifying a Subpoena.
(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information;
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) DUTIES IN RESPONDING TO A SUBPOENA.
(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) Claiming Privilege or Protection.
(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

APP    31

## EXHIBIT A – REQUESTED DOCUMENTS

## DEFINITIONS

1.    "Swift" refers to Swift Beef Co., Inc., Swift & Co., JBS Swift & CO., JBS, S.A. and their respective current and former agents, representatives, officers, servants, employees, subsidiaries, affiliates, partners, members, joint venturers, predecessors, successors, assigns, parent companies, related entities, associates, staff members, consultants, trustees, directors, shareholders, owners, or attorneys and every company affiliated with each such company by common ownership or control.

2.    "Swift Facilities", when used herein, means collectively any of the processing facilities (including beef and lamb) and distribution facilities operated, owned and/or managed by Swift since January 1, 2000.

3.    "You" or "BMS" means Border Management Strategies and any of its current and former agents, representatives, officers, servants, employees, subsidiaries, affiliates, partners, members, joint venturers, predecessors, successors, assigns, parent companies, related entities, associates, staff members, consultants, trustees, directors, shareholders, owners, or attorneys and every company affiliated with Border Management Strategies by common ownership or control.

4.    "Communication(s)" means every manner or means of statement, utterance, notation, disclaimer, transfer or exchange of information of any nature whatsoever, by or to whomever, whether oral or written, whether face-to-face, by telephone, e-mail, fax, mail, personal delivery or otherwise, including, but not limited to, correspondence, conversations, dialogue, discussion, meeting, interviews, consultation, agreements, and other understandings.

5.    The term "concerning" means relating to, referring to, describing, evidencing, refuting or constituting.

6.    The term "document" includes written, printed, typed, recorded, or graphic matter of every kind or description, both originals and copies, and all attachments and appendices thereto. This request includes all documents or materials available by computer disk, electronic mail, or any manner of computer file, storage or memory. If the information is kept in a computer or informational storage or retrieval system, the term also includes codes and programming instructions and other materials necessary to understand such systems. The term includes, but is not limited to: calendars, checkbooks, agenda, agreements, analyses, bills, invoices, records of obligations and expenditures, corporate bylaws and charters, correspondence, electronic mail, diaries, files, legal documents, financial documents including balance sheets and profit and loss statements, letters, memoranda, recording telephone or in person conference, manuals, books, press releases, purchase orders, records, schedules, memos of interviews, evaluations, written reports of tests or experiments, public relations releases, telegrams, teletypes, work papers, drafts of documents, photographs, sound recordings, film, audio and video tapes, and all other writings whose contents relate to the subject matter of the discovery request.

---

**EXHIBIT B – REQUESTED DOCUMENTS**                                        **Page 1**

## INSTRUCTIONS

1.    This request shall be deemed to include any and all relevant documents in your possession, custody or control, including documents in the possession of your present or former employees, agents, representatives or attorneys and any other persons under your control or acting on your behalf.

## REQUESTED DOCUMENTS AND TANGIBLE ITEMS

1.  All documents relating or referring to Swift.

2.  All documents relating or referring to Swift's actual or potential employment of illegal aliens.

3.  All documents relating or referring to any attempts to detect illegal aliens seeking employment at Swift.

4.  All documents relating or referring to any attempts to detect illegal aliens employed at Swift.

5.  All documents relating to Swift's policies and procedures for detecting illegal aliens seeking employment at Swift.

6.  All documents relating to Swift's policies and procedures for detecting illegal aliens employed at Swift.

7.  All communications or correspondence between you and Swift from January 1, 2005 to the present.

8.  All documents relating or referring to Swift's policies and procedures for ensuring compliance with U.S. immigration laws with respect to the hiring of illegal aliens.

9.  All documents relating or referring to Swift's policies and procedures for ensuring compliance with U.S. immigration laws with respect to the employment of illegal aliens.

10. All documents relating or referring to your recommendations to Swift for ensuring compliance with U.S. immigration laws with respect to the hiring of illegal aliens.

11. All documents relating or referring to your recommendations to Swift for ensuring compliance with U.S. immigration laws with respect to the employment of illegal aliens.

12. All documents relating or referring to your recommendations to Swift for detecting illegal aliens seeking employment at Swift.

13. All documents relating or referring to your recommendations to Swift for detecting illegal aliens employed at Swift.

14. All documents relating or referring to your views regarding the ability to identify illegal aliens within the workforce at Swift.

15. All documents relating or referring to your views regarding the ability to identify illegal aliens within the applicant pool at Swift.

16. All documents relating or referring to your views regarding the ability to identify illegal aliens within any workforce in the United States.

17. All documents relating or referring to your views regarding the ability to identify illegal aliens within any job applicant pool in the United States.

18. All documents relating or referring to your views regarding the effectiveness of the previous Basic Pilot program in determining whether a particular worker is legally authorized to work in the United States.

19. All documents relating or referring to your views regarding the effectiveness of the existing E-Verify electronic employment verification system in determining whether a particular worker is legally authorized to work in the United States.

20. All documents relating or referring to your views regarding the effectiveness of the existing Social Security Number Verification Service in determining whether a particular worker is legally authorized to work in the United States.

21. All documents relating or referring to your views regarding the effectiveness of the existing Social Security Administration Numident database in determining whether a particular worker is legally authorized to work in the United States.

22. All documents relating or referring to your views regarding the effectiveness of the existing USCIS alien data records in determining whether a particular worker is legally authorized to work in the United States.

23. All documents relating or referring to your views regarding the effectiveness of reliance on Social Security Administration "no match" letters in determining whether a particular worker is legally authorized to work in the United States.

24. All documents relating or referring to your views regarding the effectiveness of a review of completed I-9 forms in determining whether a particular worker is legally authorized to work in the United States.

25. All documents relating or referring to your views regarding the effectiveness of relying on a worker's inability to speak the English language in determining whether a particular worker is legally authorized to work in the United States.

26. All documents relating or referring to your views regarding the effectiveness of reliance on a comparison of the physical appearance of a job applicant or employee and the purported

---

**EXHIBIT B – REQUESTED DOCUMENTS**                                    **Page 3**

photograph of such job applicant or employee on their preferred form of identification in determining whether a particular worker is legally authorized to work in the United States.

27. All documents relating or referring to meetings between you and Swift since January 1, 2005.

28. All documents relating or referring to the employee interviewes conducted by Swift at the Swift Plants during October and November 2006 and the results of same.

29. All documents relating or referring to Swift's review of I-9 forms in October 2006.

30. All documents relating or referring to the truth or falsity of Swift's statement that it "retain[ed] I-9 expert auditor, Mark Reed, to review our I-9 records retained by the agency to determine what ICE might be considering" and "Mr. Reed determined that trends and patters may indicate that employees at Marshalltown engaged in identity theft."

31. All documents relating to the truth or falsity of Swift's statement that "I understand that the ICE investigation involves review of all I-9 Form information for each employee. ICE then compares information from the I-9 form with information contained in USCIS, SSA, and other databases for each employee, and also looks for reports of wages earned at multiple locations for the same SSN. The result of this review of agency databases could reveal document fraud (use of counterfeit documents) and identity fraud (fraudulent use of valid documents or information belonging to others.)."

32. All documents relating to the truth or falsity of Swift's statement that "[b]ased on the possible alternatives for reviewing the workforce and our own recent successful and productive review of our workforce at the Marshalltown facility, I believe that there are existing options through which the Swift workforce can be reviewed, while at the same time allowing the Company to mitigate the impact caused by the removal of unauthorized workers."

33. All documents relating to the ability or inability to identify current or former members of the workforce employed in the Swift Plants that were not legally authorized to be employed in the United States.

34. All documents relating or referring to your review, audit or examination of I-9 forms completed by Swift employees.

35. All documents relating or referring to any audit of I-9 forms completed by Swift employees.

36. All documents relating or referring to the interview of Swift employees suspected of involvement in identity theft and/or suspected of lacking the legal ability to be employed in the U.S. that occurred in late 2006.

37. All documents relating or referring to the termination of Swift employees suspected of involvement in identity theft and/or suspected of lacking the legal ability to be employed in the U.S. that occurred in late 2006.

---

**EXHIBIT B – REQUESTED DOCUMENTS**                                    **Page 4**

38. All documents relating or referring to Swift's "Connect the Dots" program.

39. All documents relating or referring to any training you provided to Swift with respect to the detection of persons not legally entitled to be employed in the U.S.

40. All documents relating or referring to any training you provided to Swift with respect to the detection of persons engaged in identity theft.

41. All documents relating or referring to any training you provided to Swift with respect to the detection of forged, fraudulent or stolen identity documents.

42. All documents relating or referring to your audit, review or grading of the performance of the Swift Plants with respect to detecting persons not legally entitled to work in the U.S.

43. All audits or reports relating to the Swift Plants.

44. All training manuals, booklets, pamphlets or other information you provided Swift regarding:

    a.    The detection of identity theft.
    b.    The detection of forged documents.
    c.    The detection of persons not legally entitled to be employed in the U.S.
    d.    Compliance with U.S. immigration laws.

45. All documents relating to your compensation by Swift since January 1, 2005.

46. All documents relating or referring to the detection of document fraud.

47. All documents relating or referring to the detection of identity theft.

48. All documents relating or referring to the detection of persons not legally entitled to be employed in the U.S.

49. All documents relating or referring to trends or patterns identifiable in completed I-9 forms that may be indicative of identity theft.

50. All documents you provided to Swift since January 1, 2005.

---

**EXHIBIT B – REQUESTED DOCUMENTS**               **Page 5**